1996 SD 62

The STATE of South Dakota, Acting By and Through the DEPARTMENT OF TRANSPORTATION and the South Dakota Transportation Commission, Plaintiff and Appellant,

v.

Evelyn HENRIKSON and Gloria Lundstrom, Defendants and Appellees.

Nos. 19211, 19226.

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1996.

Decided May 29, 1996.

Mark Barnett, Attorney General, Carl W. Quist, Assistant Attorney General, Office of Legal Counsel, Department of Transportation, Pierre, for plaintiff and appellant.

Mark Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendants and appellees.

SABERS, Justice.

[¶ 1] State appeals a jury verdict to Landowners, claiming the trial court allowed improper testimony of (1) severance damages, (2) negotiations, and that (3) the jury awarded excessive damages. We reverse on issue 1 and remand.

## FACTS

[¶ 2] Evelyn Henrikson and Gloria Lundstrom (Landowners) own property in Lincoln County in the southwest part of the City of Sioux Falls. The State constructed an interchange on I–229 and Louise Avenue. Landowners' property contained 55.15 acres and lies in the southeast quadrant formed by the new interchange. The State took 5.29 acres of the property to construct the interchange, leaving Landowners with 49.86 acres. Landowners claimed the value of the remaining acres was substantially reduced and testified their loss was $1,696,000.

[¶ 3] At trial, Landowners and experts for both sides testified about the value of the property. Landowners claimed the value of the remainder of their property was damaged by the construction of the interchange because it limits access to their property from Louise Avenue to one "curb cut." Landowners provided testimony that they

would normally have free access to the section line, which is now Louise Avenue. Lundstrom testified she believed they would have two curb cuts on Louise Avenue, but the construction of the interchange allows only one. David Husby, a real estate developer and broker for Landowners, testified that the value of Landowners' property was affected by the number of curb cuts. He stated that retailers need easy access and that the number of businesses interested in the property was reduced because there was just one curb cut. The trial court allowed Landowners to testify regarding the number and effect of curb cuts on property value.

[¶ 4] As constructed, Louise Avenue contains a median preventing left turns into Landowners' property from Louise Avenue. Southbound traffic on Louise Avenue must proceed to 69th Street, turn around, and return north in order to reach Landowners' property. Lundstrom testified that before construction, she believed the Louise Avenue interchange would allow both right and left turns into the property. Initially, the trial court did not allow testimony regarding the median which prohibits left turns from Louise Avenue into the property.

[¶ 5] The jury awarded Landowners $792,815 compensation for the 5.29 acres taken by the State and the damage to the remaining 49.86 acres. The State appeals. We reverse.

[¶ 6] **1. Did the trial court's refusal to strike Landowners' testimony regarding severance damages for loss of access due to traffic regulation on Louise Avenue and admission of Exhibit M constitute reversible error?**

[¶ 7]"The basic rule has long been recognized in South Dakota, i.e., even though no part of private property is physically taken the landowner is entitled to compensation under the taking and damaging clause of our constitution (§ 13, Art. VI) when the construction of a public improvement causes damage to the property 'if the consequential injury is peculiar to the owner's land and not of a kind suffered by the public as a whole.'" *Hurley v. State*, 82 S.D. 156, 161, 143 N.W.2d 722, 725 (1966) (quoting *State Hwy. Comm'n*

*v. Bloom*, 77 S.D. 452, 461, 93 N.W.2d 572, 577 (1958)).

[¶ 8] In *Darnall v. State*, 79 S.D. 59, 108 N.W.2d 201 (1961), an interstate highway was constructed in the vicinity of the intersection of U.S. Highway 14 and State Highway 79, which was the site of plaintiffs' business. *Darnall*, 79 S.D. at 61–62, 108 N.W.2d at 202. Traffic was prevented, by a concrete curb and gutter, from entering the interstate from the intersection of Highways 14 and 79, and from reaching the intersection from the interstate. However, plaintiffs' access to Highways 14 and 79 was not changed. The *Darnall* court found no legal damage resulted, "though the traffic may be diverted by authorities and incidental loss result." *Id.* at 67, 108 N.W.2d at 205.

> Control of access and roadside development have been found to be necessary for safety and efficiency on modern highways. . . . The right of ingress and egress has been held to be subject to reasonable regulations in the public interest and for the promotion of public convenience and necessity.

*Id.* at 67–68, 108 N.W.2d at 205–06 (citations omitted). The *Darnall* court continued:

> While they may adversely affect an established business, relocations of a highway, prohibitions against crossing it or against left and U turns, the designation of one-way streets and other similar restrictions and regulations have been upheld as proper exercises of the police power of the state and not of the power of eminent domain. As such they are not compensable.

> •    •    •    •    •

> Curbs or median strips dividing a street or highway which prevent motorists from crossing it to reach a motel or garage, except by a more circuitous route, have been approved and held not to be basis for an award of damages.

*Id.* at 68–69, 108 N.W.2d at 206 (citations omitted).

[¶ 9] In *Hurley*, 82 S.D. 156, 143 N.W.2d 722, the plaintiffs' property abutted West Boulevard in Rapid City and the State erected a steel barrier blocking access to the

property from West Boulevard. The *Hurley* court stated, "[i]t is universally recognized that an owner of land abutting on a conventional street or highway has certain private rights in the street or highway distinct from that of the general public." *Hurley*, 82 S.D. at 160, 143 N.W.2d at 724 (citing 29A CJS Eminent Domain § 105(1)). The right of access cannot be taken for public use or materially impaired without compensation. *Id.* (citing 29A CJS Eminent Domain § 105(2)). The *Hurley* court recognized:

> [The right of the abutting landowner] includes, not only the rights of the general public, but the further right to the street for light and air, access, ingress, and egress, at all times, subject only to the easement of the public and the rights of the municipality. This right to an unobstructed street in front of his premises for light and air, access, ingress, and egress, belonging to an abutting owner, *constitutes the most valuable part of the property,* especially in crowded thoroughfares and on business streets, *and without these rights the property, in many instances, would be greatly diminished in value.*

*Id.* (emphasis added). However, an abutting landowner's right of access, "is not absolute, but is subject to reasonable regulation and restriction by the state under its police power in the public interest." *Id.* at 161–62, 143 N.W.2d at 725.

[¶ 10] Landowners owned 55.15 acres and the State took 5.29 acres to construct the interchange. Landowners claim damage to the remaining 49.86 acres of their property due to lack of access. The property is allowed one curb cut and a median prohibits southbound traffic from making left turns into the property. The trial court allowed testimony about the curb cuts because direct access to the property was restricted. Initially, the trial court did not allow testimony regarding the median and unavailable left turns because the state's police power authorizes placement of signs or medians which direct traffic but cause a more circuitous route to the property.

[¶ 11] The measure of damages in condemnation cases involving a partial taking is "the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking. In the application of this rule severance damage to the remaining property is included in an award." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 103 (S.D.1994) (quoting *State Hwy. Comm'n v. Hayes' Estate*, 82 S.D. 27, 34, 140 N.W.2d 680, 684 (1966)) (citations omitted).

[¶ 12] Landowners testified of damage to their property. The owner of land is generally "competent to express an opinion on the value of the property being condemned." *Id.* (citing 5 Nichols on Eminent Domain, § 23.03 (1993)). Lundstrom testified she thought the property was worth two to three dollars per square foot at the time of the taking. In its brief, the State points to the following testimony of Lundstrom:

Q: [W]hat did you think [the property] was worth on May 5th?

A: Well, of course, without the turns, it made a difference. So decreased value.

Lundstrom later clarified that her answer was based on curb cuts and left turn access to the property:

A: Because we were not able to get the approaches on ... Louise Avenue, the two approaches, like we thought we were going to have, and get the left and right turns.

When Landowners offered Exhibit M,[1] the "Owner's Outline of Value" from which Lundstrom testified, the State objected and moved to strike Lundstrom's testimony. The trial court initially excluded the exhibit for lack of foundation but permitted the testimony to remain.

[¶ 13] Wallace Henrikson testified on direct examination that the land was devalued by loss of access. He valued the commercial portion of the property at $2 per square foot before the taking, but only $1 per square foot after the taking.

On cross-examination, Henrikson testified:

---

1.  A copy of Exhibit M, "Owner's Outline of Value," is attached to this opinion.

Q: Did you allow any damage for the one-way traffic on Louise Avenue?

A: Any loss of access we feel we have damage for.

Q: I'm not talking about access, Mr. Henrikson. I'm talking about the one-way traffic on Louise Avenue.

A: Whatever restriction we have would be a cause of damage.

The State objected and moved to strike all of Henrikson's testimony. The trial court overruled the objection.

[¶ 14] The State's objection was that Landowners were testifying to damages which were not compensable. This objection was made at the completion of each of Lundstrom's and Henrikson's testimony. Exhibit M was admitted following Henrikson's testimony. The trial court ruled the objection went to the weight of the exhibit, not its admissibility.

[¶ 15] As background, Landowners may show the reality of their limited access situation, which includes the restrictions from the median. Under *Hurley*, Landowners have the right to be compensated for loss of access to their property. *Hurley*, 82 S.D. at 160, 143 N.W.2d at 724. Under *Darnall*, "where there is no physical taking and the owner's access to the highway on which he abuts is not unreasonably diminished or interfered with, his loss is due to diversion of traffic, a lawful exercise of the police power and there can be no recovery." *Darnall*, 79 S.D. at 70, 108 N.W.2d at 207.

[¶ 16] In the course of this trial, five witnesses gave their opinion as to amount of Landowners' loss. Steve Shaykett, a witness for the State, testified the value of the loss was $63,500. Dennis Holles, another witness for the State, testified the loss was $39,700. Both were qualified as expert witnesses and are professional appraisers.

[¶ 17] Deane Davenport was the expert witness who testified on behalf of Landowners. Davenport, a professional appraiser, testified that the damage suffered by Landowners was $225,000. Henrikson and Lundstrom both testified that, in their opinion as owners, they sustained damages of $1,696,000. The jury returned a verdict of $792,815.

[¶ 18] The State objected and moved to strike the testimony of Henrikson and Lundstrom based on an improper measure of damages. Rather than granting the motion, the trial court held the testimony went to the weight of the evidence and allowed it to remain. The trial court compounded its error by allowing admission of Exhibit M as a written summary of this testimony. The trial court attempted to cure the problem by instructing the jury that the median was not compensable damage.[2]

[¶ 19] However, the result of the jury's verdict shows it ignored the instruction and relied instead upon the damages as incorrectly testified to by Henrikson and Lundstrom. *S & SJ Drainage Dist. v. Reed*, 215 Cal. App.2d 60, 29 Cal.Rptr. 847, 854 (1963). The jury returned a verdict of $792,815, three times the damages set forth by Landowners' own expert, Deane Davenport. The only testimony which could justify the verdict is that of Landowners, which included the erroneous damages for the median.

[¶ 20] As indicated, owners of realty are presumed to be acquainted with the value of their property and are allowed to testify to its value. *Kelley*, 513 N.W.2d at 103; *State Highway Comm'n v. Beets*, 88 S.D. 536, 540, 224 N.W.2d 567, 569 (1974) (citing *Hayes Estate*, 82 S.D. at 42, 140 N.W.2d at 688). However, they are held to the same rules concerning the measure of damages as expert witnesses. *See State Hwy. Comm'n v. Bredvik*, 268 N.W.2d 144, 146 (S.D.1978); *State Dept. of Highways v. Pigg*, 656 P.2d 46, 49 (Colo.App.1982). Where any witness testifies to improper elements of damages, it is

---

2. The trial court instructed the jury as follows:
    In determining the damages to the property, you are not to consider the median which prevents crossing the highway and which prevents left hand turns, as these restrictions are a proper exercise of the police power of the State and as such are not compensable.

    You may, however, consider the restriction which limits access to the highway from and into the property, if you find that it materially impairs such access and the injury is peculiar to the owners' land and not of a kind suffered by the general public.

proper for the trial court to strike that testimony. *Lake Cty. Forest Preserve Dist. v. Kerrigan*, 58 Ill.App.3d 249, 15 Ill.Dec. 734, 736, 374 N.E.2d 27, 29 (1978); *Dept. of Public Works v. Butler*, 5 Ill.App.3d 134, 283 N.E.2d 109, 110 (1972); *Commonwealth v. Rosenblatt*, 416 S.W.2d 754, 757 (Ky.1967).

■ [¶ 21] There is no way to justify this verdict other than the testimony of Henrikson and Lundstrom. As they included improper damages for the median, which are not compensable under *Darnall* and *Hurley*, it was error for the trial court to refuse to strike their testimony and to admit Exhibit M. Therefore, the trial court's admission of Exhibit M and refusal to strike the testimony were reversible error in these circumstances requiring a new trial. We reverse and remand for retrial consistent with this opinion.

[¶ 22] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

## OWNER'S OUTLINE OF VALUE

| | | | |
|---|---|---|---|
| 1. Original Parcel 55.15 Acres | | | 2,402,334 sq. ft. |
|    Commercial Area | + | | 1,535,400 sq. ft. |
|    Multi-Residential Area | + | | 866,934 sq. ft. |
| 1A. Value Before Taking | | $3,866,000 | |
| 2. State Taking May 5, 1992, 5.29 Acres and Damage of Remainder | | | 230,432 sq. ft. |
| 3. Remaining Parcel | 49.86 Acres | | 2,171,411 sq. ft. |
|    Commercial | + 35.25 Acres | | 1,535,400 |
|    Non-Residential | + 14.61 Acres | | 636,411 |
| 3A. Value After Taking and Damage to Remainder | | $2,170,000 | |
| 4. Total Claim: Taking of 5.29 Acres Acres and Damage of Remainder 49.86 Acres | | $1,696,000 | |

## RESTATEMENT OF ABOVE

| | | |
|---|---|---|
| 5. Value Before Taking: | | $3,866,000 |
|    Value After Taking: | − | $2,170,000 |
|    Loss of Defendants: | | $1,696,000 |