1999 SD 16

**CITY OF SIOUX FALLS, A municipality chartered under the Constitution of the State of South Dakota, Plaintiff and Appellant,**

v.

**Douglas L. JOHNSON and Sherry D. Johnson, Defendants and Appellees.**

Nos. 20336, 20359.

Supreme Court of South Dakota.

Argued Oct. 20, 1998.

Decided Feb. 3, 1999.

R. Shawn Tornow, Chief Assistant City Attorney, Sioux Falls, for plaintiff and appellant.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendants and appellees.

MILLER, Chief Justice.

[¶ 1.] Johnsons were awarded $1.2 million as just compensation for their condemned property. City filed motions for remittitur and a new trial. The trial court denied both motions and City appeals. We affirm in part and reverse and remand in part.

## FACTS

[¶ 2.] On September 27, 1995, the City of Sioux Falls initiated an action to condemn three adjoining tracts of land owned by Doug and Sherry Johnson in Lincoln County, South Dakota. Condemnation of the property was necessary for a public right-of-way and an adjoining storm water drainage project. Johnsons' property, which included a house with a three-stall garage and a horse barn, consisted of 9.70 acres. The house, which contained an indoor swimming pool and gym, had approximately 5,000 square feet on the upper levels, and 2,000 square feet on the lower level. City estimated the fair market value of the property to be $423,-000, and deposited that amount with the trial court.

[¶ 3.] On November 3, 1995, Johnsons stipulated that they would waive a hearing challenging the taking of their property. They then received the $423,000 that had been deposited with the court.

[¶ 4.] Everyone agreed that November 3, 1995, would be the date of taking. Nonetheless, Johnsons continued to occupy and possess the property until the fall of 1996.[1] Once City received actual possession of the property, it deemed it necessary, in preparing the property for the planned projects, to remove the home from the property. City, unable to sell or otherwise remove the house, destroyed it by burning.

[¶ 5.] City received two fair market appraisals on the property. The two independent appraisals valued the property, as of the date of taking, at $432,000 and $495,000.[2] At trial, an appraiser hired by Johnsons valued the property, as of the date of taking, at $540,000. Doug Johnson testified at trial that the property ranged in value from $1.6 million to $2.2 million. Sherry Johnson testified that the fair market value of the property was $3.1 million.

[¶ 6.] The jury returned a verdict for Johnsons, awarding them $1.2 million. City filed a motion for a new trial or remittitur. Both motions were denied.

[¶ 7.] On appeal, City raises the following issues:

1. Whether the trial court abused its discretion in failing to grant City's timely motion for a new trial.

2. Whether the trial court erred in denying City's motion for change of venue.

---

1. Because this was not a "quick take" action, Johnsons were allowed to remain in possession. City was granted possession by court order on August 12, 1996, but did not acquire actual possession until that fall.

2. "The fair market value of the property is to be determined at the time of taking." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 102 (S.D.1994) (citing *Basin Elec. Power Co-op., Inc. v. Cutler*, 254 N.W.2d 143 (S.D.1977)). " 'Market value' is the highest price for which property can be sold in the open market by a willing seller to a willing buyer, neither acting under compulsion and both exercising reasonable judgment." *City of Huron v. Jelgerhuis*, 77 S.D. 600, 605, 97 N.W.2d 314, 317 (1959) (citation omitted); *see generally* 26 AmJur2d *Eminent Domain* § 295 (1996).

3. Whether the trial court committed reversible error by allowing Johnsons to testify and attribute additional value to the subject property based upon the "scope of the project."

4. Whether the trial court erred in refusing to give City's proposed instructions defining "speculation" and "conjecture."

5. Whether the trial court erred in failing to grant City's motion for remittitur in lieu of a new trial.

6. Whether the trial court erred in allowing prejudgment interest to be added to the judgment from the date of taking to the verdict.

### DECISION

[¶ 8.] 1. **The trial court abused its discretion in denying City's motion for a new trial.**

■ [¶ 9.] Our standard of review of a trial court's ruling on a motion for a new trial is well established.

"[A] motion for a new trial is addressed to the sound discretion of the trial court; we will not overturn the court's ruling unless it appears affirmatively from the record there has been an abuse of discretion." *Robbins v. Buntrock*, 1996 SD 84, ¶ 16, 550 N.W.2d 422, 427 (citing *Fullmer v. State Farm Ins. Co.*, 498 N.W.2d 357, 361 (S.D.1993); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 153 (S.D.1986); *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D.1985)). "Additionally, this court has consistently stated that more deference is given to the trial court's grant of a new trial than to its denial of one[.]" *Tunender v. Minnaert*, 1997 SD 62, ¶ 9, 563 N.W.2d 849, 851 (citations omitted). This is because orders allowing new trials "are not conclusive or decisive of any rights or issues.... They merely 'open the way for a reinvestigation of the entire case upon its facts and merits.'" *Jensen v. Miller*, 80 S.D. 384, 389, 124 N.W.2d 394, 396 (1963) (citation omitted).

*Morrison v. Mineral Palace*, 1998 SD 33, ¶ 7, 576 N.W.2d 869, 870.

[¶ 10.] a. *The trial court abused its discretion by allowing Doug Johnson to testify to a range of values when offering his opinion of the value of the property.*

■ [¶ 11.] City argues the trial court erred in allowing one of the former landowners, Doug Johnson, to testify as to a range of values for the property. City claims this testimony was speculative, conjectural, baseless, and highly prejudicial. We agree.

■ [¶ 12.] An agreed-upon sale of realty between a willing buyer and a willing seller is nothing more than a contract. As such, under SDCL 53–1–2(4), there must be consideration. We are aware of no contract for the sale of realty which calls for its consideration to be a "range of values" rather than a sum certain in exchange for the realty. While opinions may vary as to value during sale negotiations, if there is to be an ultimate sale, ranges disappear and the agreement is for a specific amount.

■ [¶ 13.] Generally, a landowner "is competent to express an opinion on the value of his property being condemned." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 103 (S.D.1994) (citing 5 Nichols on Eminent Domain § 23.03 (1993)). The landowner is presumed to have "special knowledge of the property, its income producing capacity, and other pertinent traits sufficient to render an opinion as to value." *State v. Spiry*, 1996 SD 14, ¶ 8, 543 N.W.2d 260, 262 (citing *Kelley*, 513 N.W.2d at 103). However, the landowner is subject to the same requirements as is an expert in giving an opinion on valuation.

[O]wners of realty are presumed to be acquainted with the value of their property and are allowed to testify to its value. However, they are held to the same rules concerning the measure of damages as expert witnesses. Where any witness testifies to improper elements of damages, it is proper for the trial court to strike that testimony.

*State v. Henrikson,* 1996 SD 62, ¶ 20, 548 N.W.2d 806, 810–11 (internal citations omitted).

[¶ 14.] Here, Johnson has failed to show why he should not be bound to testify as to a sum certain. His own expert testified in that manner giving an opinion that the damages for the taking were $540,000. Johnson's wife also used a sum certain in testifying that, in her opinion, the loss was $3.1 million.

[¶ 15.] We find Johnson's methodology was improper. As such, the trial court abused its discretion by allowing the range of values testimony.

[¶ 16.] *b. The trial court did not abuse its discretion by limiting City's cross-examination of Doug Johnson.*

■ [¶ 17.] City argues the trial court abused its discretion when it limited City's cross-examination of Doug Johnson. City maintains the court limited its opportunity to fully explore the elements upon which Johnson based his range of values. City specifically claims it should have been allowed to impeach him to determine if he relied on a neighboring landowner's condemnation award when he determined his range.[3] It claims this opportunity for impeachment was needed to determine if he relied on an improper element of damage, because his reliance on improper damage elements would result in his testimony being stricken and disregarded. We, however, find these arguments to be unpersuasive.

■ [¶ 18.] "[T]he trial court retains broad discretion concerning the limitation of cross-examination and it will be reversed only when there is a clear abuse of that discretion and a showing of prejudice[.]" *State v. Koepsell,* 508 N.W.2d 591, 595 (S.D.

1993) (citations omitted); *see* SDCL 19–14–18. City has the burden of establishing it has been prejudiced by the limitation, and that the jury would have had a different impression had the cross-examination been allowed. *Koepsell,* 508 N.W.2d at 595 (citations omitted).

[¶ 19.] We find City has not met its burden. It has not established the jury would have received a different impression had City been allowed to cross-examine Johnson in the way in which it intended. Further, it has not established it has been prejudiced in any way by the limitation. It was allowed to cross-examine Johnson on the elements on which he based his range of values. In fact, several times City specifically questioned him about that basis. Johnson answered these inquiries. The fact that these inquiries did not give City its sought-after response did not entitle it to probe into areas which the trial court had determined to be inadmissible. This limitation on Johnson's cross-examination was not an abuse of discretion.

[¶ 20.] *c. There was not sufficient evidence to support the jury's verdict.*

■ [¶ 21.] City argues the evidence was insufficient to support the jury's verdict. It claims the verdict was the product of "passion, prejudice, or mistake of law in the excessiveness of the award in light of insufficient evidence." We agree.

■ [¶ 22.] " '[I]f the jury's verdict can be explained with reference to the evidence ... the verdict should be affirmed.' " *Spiry,* 1996 SD 14, ¶ 19, 543 N.W.2d at 264 (quoting *Miller v. Hernandez,* 520 N.W.2d 266, 272 (S.D.1994)). The verdict will not be set aside unless it is "clearly 'unreasonable, arbitrary and unsupported by the evidence.' " *Bakker v. Irvine,* 519 N.W.2d 41, 49 (S.D.

3. Prior to City's cross-examination of Doug Johnson, the trial court ordered that no evidence concerning the dollar amount of Bill Spiry's condemnation award would be admitted. Spiry's land was adjacent to Johnsons' property. The court then limited City's cross-examination of Johnson, when it believed the prohibited evidence may come before the jury. The cross-examination limitation occurred when City inquired as to other properties on which Johnson relied to determine his range of values. Reading from his deposition, he referred to Bill Spiry's property. City then continued to read Johnson's deposition, which next asked: "[W]hat is it that you looked at about his property that helped you formulate an opinion to value on your property?" At that point, the trial court asked counsel to approach the bench.

1994) (quoting *Kusser v. Feller,* 453 N.W.2d 619, 621 (S.D.1990)) (other citations omitted). However, even though "[m]ere generosity is not enough to reverse a jury's verdict," the verdict can be reversed "if the award 'is so extremely excessive as to justify the inference or conclusion that it is the product of corruption, passion or prejudice.'" *Nebraska Elec. Generation & Transmission Coop. v. Tinant,* 90 S.D. 284, 292, 241 N.W.2d 134, 138 (1976) (quoting *Tufty v. Sioux Transit Co.,* 70 S.D. 352, 357, 17 N.W.2d 700, 702 (1945) (citation omitted)).

[¶ 23.] The jury returned a verdict that awarded Johnsons $1.2 million as just compensation for the taking of their property. Our review of the record shows there is not sufficient evidence to justify such a verdict. Johnson's own testimony is the only evidence that could arguably support the verdict. That testimony included prohibited references to the burning and destruction of the home, improper valuation (*see* issue 1a), and an inability to settle with City. Therefore, we hold the verdict was the product of passion or prejudice and clearly not supported by the evidence.

[¶ 24.] *d. The trial court abused its discretion when it denied City's motion for mistrial based upon violations of pretrial orders in limine.*

[¶ 25.] Prior to trial, the court granted City's motion in limine to prohibit sentimental evidence or testimony regarding the property, the burning, removal or destruction of the home, or Johnsons' eviction or removal from the property. It also granted City's motion to limit evidence or testimony regarding any settlement offers or negotiations and the method of acquiring or taking possession of the property. City claims that, because Doug Johnson violated these orders, a mistrial should have been granted. We agree.

[¶ 26.] City points to three instances of claimed violations by Johnson. The first two violations of the order occurred during Johnson's direct examination. Therein, he made reference to City's burning of the house. City objected to the prohibited testimony as

a violation of the pretrial order. The trial court sustained the objection and admonished the jury to disregard the comment. Shortly thereafter, in fact only six questions later, Johnson again violated the order by commenting that it was "real hard for me to see a structure as nice as that be demolished or whatever." Again, City objected to the testimony. Then, during cross-examination, in response to City's inquiry as to the elements upon which Johnson based his property's value, he stated "[i]f we could settle on a price between you and I, we wouldn't have to do this." City objected, and the trial court informed Johnson he had gone too far and instructed the jury to disregard. At that point, City moved for a mistrial, which was denied.

[¶ 27.] Moreover, even after City moved for a mistrial based on violations of the pretrial order, a fourth violation of the order occurred. During closing argument rebuttal, Johnsons' attorney, Mr. Meierhenry, spoke of Johnsons being dispossessed of their home. City objected, and the trial court instructed Mr. Meierhenry that he had gone too far.

[¶ 28.] "A trial court's ruling on a motion for mistrial ... will not be disturbed unless a clear abuse of discretion is shown." *Robbins,* 1996 SD 84, ¶ 6, 550 N.W.2d at 425 (citations omitted). "[F]or a violation of an in limine motion to serve as a basis for a mistrial and a later motion for new trial, the order must be specific in its prohibition, and a violation must be clear." *Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 426 (S.D.1994) (citation omitted). The granting of a new trial is proper only "where the violation has prejudiced the party or denied [such party] a fair trial." *Id.* "Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id.* (citations omitted).

[¶ 29.] Here, the trial court's order was specific in its prohibition. It prohibited Johnsons from testifying as to the burning, removal or destruction of the property. It

further prohibited testimony concerning any negotiations or offers prior to trial and prohibited testimony concerning Johnsons' removal or eviction from the property. Johnson and his attorney were well aware of these prohibitions; yet, the order was ignored. As a result, these violations could do nothing but prejudice City's case.

[¶ 30.] As this Court has stated, "once the prejudicial matters are brought before the jury no amount of objection or instruction can remove the harmful effect." *Kjerstad*, 517 N.W.2d at 427 (citing *Lapasinskas v. Quick*, 17 Mich.App. 733, 170 N.W.2d 318, 319 (Mich.App.1969)). After reviewing all the testimony and considering the verdict, we find that was clearly the case here. The harmful effect of the violations of the pretrial order prevented City from receiving a fair trial. We are convinced these violations "produced some effect upon the jury's verdict." *See id.* at 428. Therefore, we hold that the trial court abused its discretion in denying City's motion for a mistrial.

**[¶ 31.] 2. The trial court did not abuse its discretion in denying City's motion for change of venue.**

[¶ 32.] We review a trial court's ruling on a change of venue motion under an abuse of discretion standard. *Bland v. Davison County*, 1997 SD 92, ¶ 5, 566 N.W.2d 452, 454 (citations omitted). Abuse of discretion is " 'discretion exercised to an end or purpose not justified by, and against, reason and evidence.' " *Id.* at ¶ 5, 566 N.W.2d at 455 (quoting *Ward v. Lange*, 1996 SD 113, ¶ 23, 553 N.W.2d 246, 252 (citations omitted)).

[¶ 33.] A court may grant a motion for change of venue if there is reason to believe a fair trial cannot be had in the county in which the case is set to be tried. *See* SDCL 15–5–11;[4] *see State v. Petersen*, 515 N.W.2d 687, 688 (S.D.1994). The burden is on City to establish a fair and impartial jury cannot be had. *See State v. Smith*, 477 N.W.2d 27, 32 (S.D.1991) (citing *State v. Weatherford*, 416 N.W.2d 47 (S.D.1987)). It argues a fair and impartial jury could not be obtained in Lincoln County because of the extensive pretrial publicity and the general ill will Lincoln County and its residents feel toward it. We disagree.

[¶ 34.] City based its change of venue motions solely on the potential for prejudice created by pretrial publicity. We have stated that "pretrial publicity, alone, is not enough ... to warrant a change of venue." *See Petersen*, 515 N.W.2d at 688; *see also Bland*, 1997 SD 92, ¶ 6, 566 N.W.2d at 455 (stating "pre-trial publicity, standing alone, is insufficient to warrant a change of venue"). We find that without another basis for the change of venue motion, City cannot establish it has been prejudiced by the trial court's denial of the motion.[5]

[¶ 35.] City maintains, however, that it was denied the opportunity during voir dire examination to explore whether a fair and impartial jury could be seated in Lincoln County. Again, we disagree.

[¶ 36.] On the day of trial and prior to jury selection, City reminded the trial court that it had requested a change of venue, and then requested it be allowed to question jurors regarding certain newspaper articles concerning Johnsons' property. It then wanted to present those articles to prospective jurors during voir dire examination. The court denied this motion. City argues the court's ruling denied it the opportunity to ascertain public hostility in its voir dire examination.

---

4. SDCL 15–5–11 provides the grounds for change of venue. It states as follows:

The court may change the place of trial in the following cases:
(1) When the county designated for that purpose in the complaint is not the proper county;
(2) Where there is reason to believe that an impartial trial cannot be had therein;
(3) When the convenience of witnesses, and the ends of justice would be promoted by the change.

5. City's brief claims the ill will that Lincoln County and its residents feel toward City also contributes to the impossibility of obtaining a fair and impartial jury in Lincoln County. City did not, however, assert this in its motions to the trial court.

[¶ 37.] We have recognized that voir dire examination is the appropriate forum for ascertaining public hostility. *Bland,* 1997 SD 92, ¶ 10, 566 N.W.2d at 456 (citing *State v. Arguello,* 502 N.W.2d 548, 552 n.1 (S.D. 1993)). Even though City would have us believe it could not make meaningful inquiry concerning the pretrial publicity, we find that was not the case. The trial court prohibited City from presenting newspaper articles to prospective jurors during voir dire. It did not prohibit City from all inquiry into pretrial publicity. When making its ruling, the court stated:

> I'll deny your right to inquire, Counsel. As soon as you raise this up to one of the jurors, you're going to have a whole bunch of them now saying what was that all about. I think it severely prejudices the City's case if this jury sees this....[Y]ou may ask them in the usual questions concerning whether they've read or heard anything in this case as long as they don't we're all better off.... Don't use [the articles].

[¶ 38.] As this clearly shows, City was not prohibited from all inquiry into pretrial publicity. In fact, City inquired about pretrial publicity more than once during voir dire examination. In addition, the trial court's limitation on the use of newspaper articles during voir dire did not preclude City from using other avenues to obtain information concerning the prospective juror's exposure to pretrial publicity. *See Bland,* 1997 SD 92, ¶ 10, 566 N.W.2d at 456 ("[Counsel] could have asked to submit written questions to the panel for the purpose of determining which jurors may have heard out-of-court statements, and could have asked to isolate and conduct individual voir dire of those jurors who had knowledge of the case.").

[¶ 39.] City did not establish that impartial jurors could not be had in Lincoln County, or that it was prejudiced by the trial court's denial of its change of venue motion. It has not produced sufficient evidence to show a change of venue was needed. We find no abuse of discretion.

[¶ 40.] **3. Scope of the project testimony.**

[¶ 41.] Because we are reversing and remanding this case on other issues, we need not address whether the trial court erred in permitting scope of the project testimony. However, we perceive it to be this Court's obligation to provide the trial court with guidance to make scope of the project determinations.

[¶ 42.] As a guiding principle, we follow the scope of the project rule as stated in *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943). In *Miller,* the Court stated:

> If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

*Id.* at 376–77, 63 S.Ct. at 281, 87 L.Ed. at 344. Moreover, we adopt the scope of the project test as set forth in *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).[6] The *Reynolds* test states: "[I]f the 'lands were probably within the scope of the project from the time the

---

**6.** The *Reynolds* court also held that the judge must decide as a preliminary matter whether the condemned property was within the scope of the project at the time of taking. 397 U.S. at 20, 90 S.Ct. at 807, 25 L.Ed.2d at 18.

Government was committed to it' no enhancement in value attributable to the project is to be considered in awarding compensation." *Id.* at 21, 90 S.Ct. at 807, 25 L.Ed.2d at 18 (quoting *Miller*, 317 U.S. at 377, 63 S.Ct. at 281, 87 L.Ed. at 344). Further, the scope of the project rule does not require that the land taken "be actually specified in the original plans for the project." *Id.* at 21, 90 S.Ct. at 807–08, 25 L.Ed.2d at 18. All that must be shown is "that during the course of the planning or original construction it became evident that land so situated would probably be needed for public use." *Id.* at 21, 90 S.Ct. at 808, 25 L.Ed.2d at 18. Therefore, any testimony as to the enhanced value of the property based on the 57th Street extension project should be excluded.

[¶ 43.] City also raises other issues for our review. We find them lacking and without merit, and we need not specifically address them.

[¶ 44.] In addition, we need not reach the issues Johnsons raise by notice of review.

[¶ 45.] Affirmed in part and reversed and remanded in part.

[¶ 46.] AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 47.] SABERS, Justice, concurs specially in part and concurs in part.

SABERS, Justice (concurring specially in part and concurring in part).

[¶ 48.] I agree that we should reverse and remand because of Issue 1(a), the improper testimony of Doug Johnson that the value of the property *ranged* from *1.6* to *2.2* million. Accordingly, I would not reach 1(b), 1(c), or 1(d).

[¶ 49.] I concur in Issue 2, but would not reach Issue 3.