#27930-a-LSW
**2017 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BERNADINE RED BEAR
a/k/a BERNADINE SHIELDS,
as Administrator of the Estate
of DARELLE RED BEAR,
Deceased,                                                    Plaintiff and Appellant,

      v.

SESDAC, INC.,                                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE STEVEN R. JENSEN
Judge

* * * *

ROBIN L. ZEPHIER of
Abourezk, Zephier & LaFleur, PC
Rapid City, South Dakota

and

SHILOH M. MACNALLY
Rapid City, South Dakota                        Attorneys for plaintiff
                                                                and appellant.


R. ALAN PETERSON
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & LeBrun PC
Sioux Falls, South Dakota                        Attorneys for defendant
                                                                and appellee.

* * * *

ARGUED ON APRIL 25, 2017
OPINION FILED 05/17/17

#27930

WILBUR, Justice

[¶1.]     On behalf of the estate of her brother, one sister brought suit against the owners of the group home where her brother resided, alleging that the company failed to provide adequate care, caused his wrongful death, and violated her brother's next of kin's right to decide what to do with their brother's body following his death. Prior to trial, the circuit court dismissed the third claim on summary judgment. After trial, the jury found the company negligent but concluded that the negligence was not the legal cause of the injury or damage. The sister, on behalf of her brother's estate, appeals. We affirm.

### Background

[¶2.]     In 1987, a circuit court ordered that Darelle "Bill" Red Bear reside at the Health and Human Services Center in Yankton, South Dakota. He had been diagnosed with schizophrenia and a mild mental disability. He had a history of inhalant abuse, alcohol abuse, and water intoxication. Bill lived at the Center until 2000, when he became a voluntary resident in one of SESDAC, Inc.'s residences. SESDAC is a private, nonprofit community-support provider located in Vermillion, South Dakota. It assists persons with developmental disabilities and provides support for those persons to live independently within their abilities. The State contracted with SESDAC to provide home- and community-based services to wards of the State, including Bill.

[¶3.]     In 2001, a circuit court declared Bill a person in need of protection. The court appointed the secretary for the Department of Human Services (DHS) to be Bill's legal guardian. The court found that Bill lacked the capacity to meet his

health, care, safety, or therapeutic needs. The court gave the State, as Bill's guardian, the authority to make decisions regarding Bill's support, care, health, and therapeutic treatment, and to determine Bill's residence. Bill continued to reside in one of SESDAC's group homes. In 2004, the State designated Nikki Clark, a State employee, to be Bill's guardianship representative.

[¶4.] This appeal concerns SESDAC's actions beginning on December 29, 2008. Bill was living in SESDAC's group home called the "Yale House" and began to exhibit flu-like symptoms. Over the next several days, SESDAC staff documented Bill's symptoms, their assessment of his conditions, and the medicine they administered. The staff also noted when they talked to the on-call supervisor and what the supervisor told the staff to do concerning Bill. The notes documented that the on-call supervisor told the staff that Bill would be taken to the hospital on December 31. It is undisputed that SESDAC did not take Bill to the hospital that day.

[¶5.] SESDAC staff continued to monitor and report on Bill's symptoms from December 29, 2008 through January 4, 2009. The parties dispute the accuracy of SESDAC's documentation of Bill's symptoms, conditions, and treatment. It is undisputed that no medical professional examined Bill at the Yale House, although the on-call nurse did check in with SESDAC staff via telephone to receive updates on Bill's condition. The staff notes indicated that the staff attempted, sometimes unsuccessfully, to obtain a reading of Bill's blood pressure. On January 2, the staff notes documented that Bill's temperature was 97.5 degrees and that Bill had diarrhea. SESDAC staff administered an anti-diarrhea medication. On January 3,

Bill's temperature was 98.3 degrees, and Bill continued to express that he did not feel well. On January 4, at 8:00 a.m., the staff wrote that Bill's temperature was 97.2 degrees, and he was still not feeling well. Bill drank a glass of orange juice. At 11:30 a.m., the staff documented that Bill's temperature was 93.5 degrees. According to the notes, the staff was unable to obtain a reading of Bill's blood pressure. The on-call supervisor told the worker at the Yale House to push fluids and that they would call the doctor the next day.

[¶6.] At approximately 3:45 p.m., on January 4, a shift change occurred at the Yale House. Ana Nesselhoff was just leaving her shift, and Matthew Miranda was beginning his. SESDAC policy required that Nesselhoff update Miranda on the status of the residents. She informed Miranda that Bill was still not well and recommended that he check on Bill. Miranda went to Bill's room and found Bill unresponsive. Miranda could not rouse Bill or find a pulse. He called 911 and his supervisor. The parties dispute the order of these calls. It is undisputed, however, that Officer Robin Hower arrived at the Yale House, and he and another officer performed CPR on Bill until the ambulance arrived. The ambulance transported Bill to Sanford Vermillion Hospital. Bill died at the hospital at 5:03 p.m. after efforts to resuscitate him failed. He was 49 years old.

[¶7.] Renea O'Connor from SESDAC notified Clark that Bill had died. O'Connor and Clark met at the hospital. Clark then notified DHS in Pierre that Bill had died. She had a telephone discussion with DHS director Jerry Hofer and another DHS employee about organ donation and the disposition of Bill's body. O'Connor later testified that she attempted to contact Bill's next of kin but was

unable to locate a family member. According to SESDAC, neither Bill nor any family member had updated Bill's family information with SESDAC or DHS. According to Bill's estate, SESDAC called the Rosebud Reservation despite having documentation that Bill's family lived on the Pine Ridge Indian Reservation.

[¶8.] O'Connor and Clark claimed that while they were still at the hospital, they learned that neither law enforcement nor the medical professionals were going to request an autopsy. In SESDAC's view, the medical professionals made the decision not to conduct an autopsy. Bill's estate, however, later alleged that O'Connor and Clark together decided that no autopsy would be performed. Bill's estate further claimed that SESDAC via O'Connor gave the required authorization to donate Bill's organs and cremate Bill's body. It is undisputed that O'Connor contacted Dr. Wayne Evans, a retired professor of Indian Studies, to inquire about what would be appropriate, cremation or burial. It is further undisputed that O'Connor participated in the post-death decisions concerning Bill's body.

[¶9.] On January 5, 2009, Clark and DHS officially consented to the donation of Bill's organs and the cremation of his body. It is undisputed that no family member participated in any part of these decisions. Bill's funeral occurred on January 8 at Trinity Lutheran Church, and his remains were interred at Bluff View Cemetery in Vermillion, South Dakota.

[¶10.] In April 2009, Bill's brother Kenneth Red Bear called SESDAC to speak with Bill. SESDAC informed Kenneth what had happened, namely that Bill was sick for a number of days prior to his death, that no autopsy was performed, that Bill's body was cremated, and that Bill had been buried in a grave in

Vermillion. In response, Bill's sister Bernadine Red Bear, as the administrator of Bill's estate, sued SESDAC for negligence in the care and handling of Bill's body before and after his death. Bernadine, in her representative capacity, asserted three causes of action against SESDAC. First, she alleged that SESDAC negligently failed to provide Bill medical care in a timely manner, which caused Bill "mortal physical pain and mental suffering prior to his death on January 4th, 2009." Second, Bernadine asserted a wrongful death claim and sought to recover for the loss of companionship, society, love, affection, and solace of Bill. Third, Bernadine sought to recover for SEDAC's failure to seek proper consent for the handling of Bill's body after his death and for the decision to cremate Bill's body. Bernadine requested compensatory and punitive damages.

[¶11.]    SESDAC moved for partial summary judgment on Bernadine's third cause of action and her request for punitive damages, asserting that SESDAC owed no duty to Bill or Bill's estate. According to SESDAC, the State was Bill's legal guardian, and the State made the ultimate post-death decisions regarding Bill's body. SESDAC asserted that if the State "sought input from SESDAC employees on certain matters, giving of that input did not translate into an imposition of some kind of duty owed by SESDAC" to Bill or Bill's family. SESDAC also argued that even if a duty existed, Bernadine had failed to identify any evidence to support the claim that SESDAC engaged in extreme or outrageous conduct.

[¶12.]    Bernadine responded that the contractual relationship between the State and SESDAC imposed a co-duty upon SESDAC and the State regarding the handling of Bill's remains. Bernadine also argued that because the State's

guardianship over Bill terminated upon Bill's death under SDCL 29A-5-507, SESDAC was the only remaining entity with at least constructive custody of Bill's body. Therefore, in Bernadine's view, SESDAC had a legal responsibility under SDCL 34-26-16(2) and SDCL 34-26-14 to use reasonable and due diligence to find and contact Bill's next of kin immediately after Bill's death. She asserted that by failing to do so, SESDAC infringed on Bill's family's legal right to possession, custody, and control of Bill's body for purposes of burial as stated in *Chisum v. Behrens*, 283 N.W.2d 235 (S.D. 1979).

[¶13.]     The court granted SESDAC's motion for partial summary judgment. The court noted that after viewing the facts in a light most favorable to Bernadine, SESDAC was involved in the discussions and had some input in the post-death decisions concerning Bill's body. But the court did not interpret SDCL 29A-5-507 to mean that the State's guardianship over Bill terminated upon Bill's death. The court concluded that the State, not SESDAC, owed Bill a duty. The court also disagreed with Bernadine's claim that SDCL chapter 34-26 created any duty upon SESDAC. The court alternatively concluded that even if a duty existed, Bernadine failed to present any evidence to support the claim that SESDAC acted intentionally, willfully, wantonly, or maliciously. The court dismissed Bernadine's third cause of action with prejudice and her claim for punitive damages.

[¶14.]     The parties set Bernadine's remaining counts of negligence and wrongful death for a jury trial. Prior to trial, Bernadine filed a motion to change the venue from Clay County to either Minnehaha or Lincoln counties; or in the alternative, to grant leave to use certain proposed potential juror questionnaire

forms to avoid calling potential jurors with apparent and obvious conflicts of interest. Bernadine argued that prejudice would otherwise occur because she would be unable to obtain a fair and impartial jury "due to the number of local employees that SESDAC now employs, or has employed previously, who still live in Vermillion and/or Clay County." After a telephone conference, for which the record contains no transcript, the circuit court denied the motion.

[¶15.] A jury trial occurred on October 15-22, 2009. During voir dire, counsel for Bernadine questioned the potential jurors about their relationships with SESDAC. The court struck for cause every potential juror who had a relationship with SESDAC or with its employees. Counsel for Bernadine also asked the potential jurors about their feelings and attitudes toward Native Americans. Some jurors shared their feelings, but no response was negative.

[¶16.] Following voir dire, Bernadine passed the panel for cause, and the circuit court addressed certain pre-trial motions. One motion concerned Bernadine's request that the court reconsider its decision to exclude evidence related to SESDAC's involvement in the post-death decisions regarding Bill's body. The court noted that although it previously informed counsel that it believed the State's guardianship continued after Bill's death under SDCL 29A-5-507, it now believed the guardianship had ended upon Bill's death. But the court nevertheless concluded that under the circumstances it correctly ruled that SESDAC owed no duty to Bill upon Bill's death at the hospital. The court declined to reconsider its decision to exclude Bernadine's evidence concerning SESDAC's involvement in the post-death decisions.

[¶17.] At the conclusion of the trial and during the settling of the jury instructions, Bernadine requested an instruction on spoliation of the evidence. Bernadine argued that the instruction was proper because: (1) SESDAC had complete or at least coexisting control over Bill's body; (2) SESDAC participated in the decision not to have an autopsy and to cremate Bill's body; and (3) SESDAC destroyed evidence relevant to Bernadine's suit when it directed that Bill's body be cremated. The court rejected the requested instruction because of its previous ruling that SESDAC owed no duty to Bill after Bill's death at the hospital. The court also found the instruction inappropriate on the evidence submitted. Ultimately, the jury returned a special verdict form finding SESDAC negligent but concluding that SESDAC's negligence was not the legal cause of the damage alleged by Bernadine. The circuit court entered a judgment on the verdict on November 2, 2015.

[¶18.] Bernadine moved for a new trial. She argued that the circuit court's decision to grant partial summary judgment dismissing her third cause of action and decision to disallow evidence at trial related to that cause of action "created an undue prejudice and inherent unfairness toward [Bernadine] and her claims." The prejudice, according to Bernadine, was evident in the jury's verdict finding SESDAC negligent but awarding no damages. Bernadine also alleged that the court committed clear error when it denied her requested instruction on spoliation. She argued that in refusing the instruction, SESDAC was able to cast doubt upon Bill's cause of death and confuse the jury such that the jury concluded that SESDAC's negligence was not the cause of Bill's death. Bernadine further challenged the

circuit court's denial of her motion to change venue, claiming that it prejudiced Bernadine and that it violated her right to a constitutionally diverse jury of her peers.

[¶19.]     The court denied Bernadine's motion for a new trial.  It refused to reconsider its decision to dismiss Bernadine's third cause of action and to exclude evidence related to that claim.  In regard to the instruction on spoliation, the court recognized that the ability to determine Bill's cause of death related to the issue of causation on Bernadine's negligence claim.  But according to the court, Bernadine failed to present any evidence that SESDAC destroyed evidence intentionally or in bad faith.  On the issue of venue, the court noted that Bernadine did not previously attack the racial makeup of the jury and in fact, passed the panel for cause.  The court also highlighted that it struck for cause each potential juror who disclosed a relationship with either SESDAC.  The court concluded that the jury's verdict awarding no damages did not result in a miscarriage of justice because the jury did not find in favor of Bernadine on the issue of causation, despite finding SESDAC negligent.

[¶20.]     Bernadine appeals, asserting the following issues:

1.  The circuit court erred when it interpreted SDCL 29A-5-507 to extend a legal guardianship beyond Bill's death.

2.  The circuit court erred and abused its discretion when it denied Bernadine's motion for a change of venue.

3.  The circuit court abused its discretion when it denied Bernadine's request for an instruction on spoliation.

4.  The circuit court erred and abused its discretion when it denied Bernadine's motion for a new trial based on the incongruent and ambiguous jury verdict.

## Analysis

### 1. Guardianship under SDCL 29A-5-507

[¶21.] Under SDCL 29A-5-507, "[a] guardianship or conservatorship of a protected person shall terminate upon the death of the protected person, if jurisdiction is transferred to another state, or if ordered by the court following a hearing." Bernadine argues that the circuit court erred when it interpreted this statute to mean that the State's guardianship over Bill continued after Bill's death. We need not determine whether the court erred when it interpreted this statute. The status of the *State's* legal guardianship over Bill is not at issue in this case. And nothing in SDCL 29A-5-507 creates a duty upon SESDAC—SESDAC never had guardianship or conservatorship over Bill.

[¶22.] Nonetheless, Bernadine argues that if the circuit court had properly interpreted SDCL 29A-5-507 to terminate the *State's* guardianship over Bill, the court would have concluded that *SESDAC* was the only remaining entity with a duty of care, custody, and control over Bill. Bernadine relies on the contractual relationship between SESDAC and the State, asserting that the contract required SESDAC to follow the same obligations imposed upon the State related to Bill's care, custody, and control. Bernadine also directs this Court to SDCL 34-26-16(2), SDCL 34-26-14, and *Chisum*, 283 N.W.2d 235.

[¶23.] Whether a duty exists is a question of law for the court. *Foster-Naser v. Aurora County*, 2016 S.D. 6, ¶ 10, 874 N.W.2d 505, 508. Summary judgment is proper if no duty exists. *Id.* "On review, we apply the same test as the trial court: we probe the record for material facts, resolve disputed facts in favor of the

nonmoving party, and decide whether the moving party is entitled to a judgment as a matter of law." *Id.* ¶ 11 (quoting *Fisher v. Kahler*, 2002 S.D. 30, ¶ 5, 641 N.W.2d 122, 125).

[¶24.]     The contract between the State and SESDAC imposed a duty upon SESDAC "to comply in full with all licensing and other standards required by Federal, State, County, City or Tribal statute, regulation or ordinance in which the service and/or care is provided for the duration of this agreement." The contract also required that SESDAC comply with, among other things, Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act of 1990. The contract provided that SESDAC would assume any liability resulting from SESDAC's noncompliance with the licensing or other standards and from actions, suits, and damages related to SESDAC's performance of services under the contract. Yet Bernadine has not identified how the contract, and these provisions in particular, imposed any duty upon SESDAC to Bill or Bill's next of kin related to the *post-death decisions* made at the hospital.

[¶25.]     Similarly, neither SDCL 34-26-14 nor SDCL 34-26-16(2) create a duty on the part of SESDAC to Bill's next of kin. SDCL 34-26-14 identifies who has the right to custody of a dead body. It provides:

> The person charged by law with the duty of burying the body of a deceased person is entitled to the custody of such body for the purpose of burying it. However, in the cases in which an investigation or inquest is required by law to be held upon a dead body, by a coroner, such coroner is entitled to its custody until such inquest has been completed.

*Id.* SDCL 34-26-16(2) provides that "the duty of burial devolves upon the person or persons in the same degree nearest of kin to the decedent, being of adult age, and

within this state and possessed of sufficient means to defray the necessary expenses[.]"

[¶26.] In *Chisum*, we recognized that one's *intentional interference* with another's legal right to possession of a dead body under SDCL 34-26-14 and SDCL 34-26-16 constitutes an actionable wrong. 283 N.W.2d at 239-40. The actionable conduct must be "willful or malicious, as distinguished from being merely negligent[.]" *Id.* at 240 (quoting *First Nat'l Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 92, 167 N.W.2d 381, 382 (1969)). Bernadine relies on this language and argues that SESDAC engaged in "outrageous post-death conduct" jointly with the State via Clark and others and directly invaded Bill's next of kin's right to possess and handle Bill's remains. SESDAC does not dispute that it participated in the State's decision to donate Bill's organs and cremate Bill's body. But it claims that Bernadine offers only unsupported and speculative statements that SESDAC intentionally engaged in conduct to deprive Bill's next of kin of their rights.

[¶27.] "We require 'those resisting summary judgment to show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof.'" *Bordeaux v. Shannon Cty. Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127 (quoting *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 18, 652 N.W.2d 756, 765). "General allegations without specific supporting facts are insufficient." *Foster-Naser*, 2016 S.D. 6, ¶ 11, 874 N.W.2d at 508. From our review of the record on summary judgment, Bernadine did not establish a material issue of fact in dispute to support her claim that SESDAC intentionally interfered with Bill's next of kin's right to possession

and control of Bill's remains. The circuit court did not err when it granted SESDAC partial summary judgment or at trial when it excluded Bernadine's evidence related to SESDAC's involvement in the post-death decisions.

### 2. Change of Venue

[¶28.] Bernadine argues that a change of venue was warranted because many of the potential jurors were associated with SESDAC, which required counsel "to weave her way through these sensitive areas while unavoidably exposing the entire jury panel to statements made about SESDAC's close relationship with the community of Vermillion, the businesses, or how SESDAC did a lot of good things." Bernadine also claims that the representative racial minority (Native American) was not fairly represented on the jury, and SESDAC struck the last remaining Native American potential juror for discriminatory reasons. Bernadine did not raise the argument of racial discrimination in her motion to change venue; nor did she object to the make-up of the jury or the removal of the potential juror. We decline to address her unpreserved claim. *See State v. Arguello*, 502 N.W.2d 548, 554 n.4 (S.D. 1993).

[¶29.] On her claim that a fair and impartial jury could not be had in Clay County, we review the circuit court's decision to deny her motion for a change of venue for an abuse of discretion. *See Bland v. Davison County*, 1997 S.D. 92, ¶ 5, 566 N.W.2d 452, 454. Under SDCL 15-5-11:

> The court may change the place of trial in the following cases:
>
> (1) When the county designated for that purpose in the complaint is not the proper county;

(2) Where there is reason to believe that an impartial trial cannot be had therein;

(3) When the convenience of witnesses, and the ends of justice would be promoted by the change.

Bernadine relies on subsection two. She bears the burden of proving that a fair and impartial jury could not be had. *City of Sioux Falls v. Johnson*, 1999 S.D. 16, ¶ 33, 588 N.W.2d 904, 911.

[¶30.]       From our review, Bernadine has not met her burden. During voir dire, Bernadine questioned the potential jurors about their relationships with and knowledge of SESDAC. The court struck potential jurors based on their relationships with SESDAC, and Bernadine passed the panel for cause. Bernadine, through voir dire, was able to remove potential jurors harboring bias or prejudice against Bill's estate because of their relationship with SESDAC. On appeal, Bernadine presents no evidence that the impaneled jury was unable to render an impartial verdict. *See State v. Weatherford*, 416 N.W.2d 47, 52 (S.D. 1987). Because a change of venue is warranted when there "is reason to believe a fair trial cannot be had in the county in which the case is set to be tried," and Bernadine has not met her burden of proof, the circuit court did not abuse its discretion when it denied Bernadine's motion. *See Johnson*, 1999 S.D. 16, ¶ 33, 588 N.W.2d at 911.

### 3. Spoliation Instruction

[¶31.]       Bernadine does not cite legal authority for her claim that she was entitled to a jury instruction on spoliation. She relies on her argument that the State had no right to make post-death decisions regarding Bill's body. So in her view, SESDAC controlled all of the post-death decisions, and SESDAC's destruction

of evidence denied Bernadine of proof necessary to establish the causal link between SESDAC's negligent conduct and the resulting damage.

[¶32.]    "To establish reversible error from a trial court's refusal to give a requested instruction, the party asserting error must show that (1) the tendered instruction was a correct statement of the law, (2) the instruction was warranted by the evidence, and (3) the error in not giving the instruction was prejudicial." *State v. Engesser*, 2003 S.D. 47, ¶ 43, 661 N.W.2d 739, 753.  Here, although Bernadine's requested instruction on spoliation was a correct statement of the law, it was not warranted by the evidence.  A spoliation instruction does not become warranted just because evidence was destroyed.  "A proper application of the rule requires a showing of an intentional act of destruction." *Id.* ¶ 44.  The instruction "is proper only when substantial evidence exists to support a conclusion that the evidence was in existence, that it was in the possession or under the control of the party against whom the inference may be drawn, that the evidence would have been admissible at trial, and that the party responsible for destroying the evidence did so intentionally and in bad faith." *Id.* ¶ 46.

[¶33.]    Bernadine has failed to establish that SESDAC was the party in possession and control of Bill's body even though SESDAC participated in the post-death decisions.  The State, whether right or wrong, gave the required consent to cremate Bill's body and donate his organs.  Even so, had Bernadine established that Bill's body at the hospital was in SESDAC's control or possession, Bernadine has not presented evidence that SESDAC's participation in the decision to cremate Bill's body and donate his organs was an intentional act of destruction in bad faith.  The

circuit court did not abuse its discretion when it refused Bernadine's instruction on spoliation.

### 4. New Trial

[¶34.]    Bernadine moved for a new trial asserting, among other things, that the jury's verdict was incongruent and ambiguous.  She argues that a finding of negligence necessarily includes the conclusion that injury occurred.  We review the denial of a motion for a new trial for an abuse of discretion.  *Lenards v. DeBoer*, 2015 S.D. 49, ¶ 10, 865 N.W.2d 867, 870.  We view the evidence in a light most favorable to the verdict to determine if "the jury's award was a result of passion or prejudice or that the jury was palpably mistaken on the rules of law by which damages in this case are to be measured."  *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 525 (S.D. 1995); *accord Lenards*, 2015 S.D. 49, ¶ 10, 865 N.W.2d at 870.

[¶35.]    The court instructed the jury that Bernadine had the burden of proving that SESDAC was negligent in causing Bill's death and that SESDAC's negligence was a direct cause of the injuries and damages claimed by Bernadine in her representative capacity.  The instructions also informed the jury that it must decide whether SESDAC was negligent, and if so, whether that negligence was the legal cause of any injury to Bernadine in her representative capacity.  The parties submitted a special verdict form to the jury.  That form provided:

> 1. Was SESDAC negligent?  Yes: ____/ No: ___.
>
> **(If your answer to Question No. 1 is "yes", then you must answer question No. 2.  If your answer is "no" you are finished and the jury foreperson should date and sign the Verdict Form.)**

> 2. Was SESDAC's negligence the legal cause of Plaintiff's damages? Yes: ____ / No: ____.
>
> **(If your answer to Question No. 2 is "yes", then you must answer Question No. 3. If your answer is "no", you are finished and the jury foreperson should date and sign the Verdict Form.)**
>
> 3. a. What amount of damages, if any, do you determine should be awarded for Darelle Red Bear's wrongful death? _____.
>
> b. What amount of damages, if any, do you determine Bill Red Bear suffered prior to his death?
>
> _____.
>
> **(After you have completed your answers to Question No. 3 you are finished and the foreperson should sign and date the Verdict Form.)**

The jury put an X on the line for "Yes" in response to the first question and put an X on the line for "No" in response to whether SESDAC's negligence was the legal cause of Bernadine's damages.

[¶36.] From our review of the record, the jury had before it sufficient evidence to conclude that SESDAC's negligence was not the legal cause of Bernadine's damages in her representative capacity. The jury could have concluded that SESDAC's staff was negligent in its care of Bill by failing to get accurate temperature readings and blood pressure recordings or that Miranda was negligent for calling his supervisor before calling 911 or that SESDAC was negligent because Miranda did not perform CPR. But the jury likewise could have concluded that Bernadine failed to prove causation. SESDAC's expert testified that had SESDAC taken Bill to the hospital or doctor earlier the result may have been the same. The expert also opined that it was unlikely that a doctor would have done anything

differently than SESDAC in caring for Bill and that a doctor's examination may not "have found anything that would have signaled a disease that was imminently going to result in [Bill's] death." Because the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice, or mistake of law, the circuit court did not abuse its discretion when it denied Bernadine's motion for a new trial.

[¶37.]    Affirmed.

[¶38.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.