BLUE RIVER POWER COMPANY, APPELLANT, v. FRANK HRONIK ET AL., APPELLEES.

FILED JULY 18, 1924. Nos. 22890, 22891.

1. **Eminent Domain:** IRRIGATION AND WATER-POWER. Proceedings for condemnation of rights of way for irrigation or water-power purposes, including the right of overflow and damage caused to upper riparian lands by the construction and maintenance across a stream of a dam for either of said purposes, may be maintained under the provisions of chapter 69, Laws 1895 (Comp. St. 1922, sec. 8452 *et seq.*).

2. ———: ———: PETITION. In order to confer jurisdiction, the petition by which such proceedings are instituted must with substantial accuracy describe the lands to be crossed, the size of the works to be constructed, and the quantity of land required to be taken.

APPEAL from the district court for Saline county: RALPH D. BROWN, JUDGE. *Affirmed.*

*Thomas, Vail & Stoner,* for appellant.

*Glenn N. Venrick* and *John E. Mekota, contra.*

Heard before LETTON, ROSE and DEAN, JJ., BLACKLEDGE and REDICK, District Judges.

BLACKLEDGE, District Judge.

This is a proceeding under the law of eminent domain seeking the condemnation of rights for the overflow of lands caused by the erection and maintenance of a dam across the Blue river, which is being constructed for water-power purposes. There are two appeals involving the same issue which will be treated as one case.

The petition was filed November 26, 1920. It alleges the corporate capacity of the plaintiff, that it is the owner of three irregular tracts of land in sections 34 and 35, township 7, range 4, Saline county, containing an aggregate acreage of 20.35. It is also alleged:

"That the Blue river runs through and across the above described tract of land; that your petitioner has been duly authorized to construct a dam across the Blue river upon said real estate to the height of sixteen (16) feet for water-power purposes; that your petitioner duly submitted a plan of its proposed dam to the state board of irrigation, highways and drainage of the state of Nebraska, for examination and approval, and that said state board duly approved the same March 2, 1918, and authorized its construction to a height of sixteen (16) feet; that your petitioner is the owner in fee simple of both sides of said river where said dam is being constructed as aforesaid and has the legal title thereto, that said dam is in the course of construction and nearly completed and said water-power plant will be ready for operation within a few days.

"Your petitioner alleges that there are no lands below the site of said dam that will be overflowed or injured by reason of the construction of said dam or the operation of said power plant.

"Your petitioner further alleges that the real estate hereinafter mentioned and not owned by it, situated in township 7 north, of range 4 east of the 6th P. M. in Saline county, Nebraska, and hereinafter specifically described,

are lands situated above the site of said dam and through which said Blue river flows,. which are or probably will be overflowed or injured by reason of the construction and erection of said dam and the operation of said power plant."

It then gives 19 separate descriptions of lands owned. in which rights are sought to be acquired by condemnation. One description is: "That Frank Hronik is the owner of the N. E.¼ of the N. W.¼ of Sec. 35; the S. E.¼ of the S. W.¼ of Sec. 26; all of the S.W.¼ of the S. W.¼ of Sec. 26, except a tract of land at the south end thereof lying south of the channel of the Big Blue river and containing about 4½ acres more or less; also that portion of the S. E.¼ of the S. E.¼ of Sec. 27, lying east of the channel of the Big Blue river and containing 2½ acres more or less, of which tracts about 41.67 acres will be taken, over-flowed or damaged; and that Bessie Hronik is the wife of the said Frank Hronik."

It is further alleged that the petitioner has not been able to agree with the several owners and parties interested touching the compensation and damages that will be sustained by the construction of the dam and operation of the plant, and prayer is made for the appointment of appraisers to ascertain the damage and determine the compensation to be made.

A summons was issued on the same date to the sheriff requiring him to summon certain appraisers to appear at or on the lands December 10, 1920, at 10 o'clock a. m., "to severally appraise the damages sustained by the parties hereinafter named to the lands hereinafter described." There follows a description of lands as in the petition. A notice containing the same description was issued on the same date by the petitioner and served by the sheriff notifying the owners that the petitioner was about to complete the construction of a dam for water-power purposes across the Blue river at or near the south line of the northwest quarter of the northwest quarter of section 35, township 7, range 4, and that appraisers would proceed on the lands December 10, 1920, at 10 o'clock a. m., to determine

and assess the damage.   December 9 and 10 certain objections were filed by some of the owners, and on December 10 a supplemental petition was filed which seeks to bring in a new party and other real estate not before described in the petition.   Also, a motion to amend each description in the petition by inserting the acreage was filed and a motion to amend the summons to conform to the petition as amended and the supplemental petition.   The objections of the owners were all overruled.   The amendments asked by petitioner were all allowed.

December 14 a report of the appraisers was filed and thereupon appeals were perfected both by the petitioner and by the owners to the district court.   In the district court the owners, as appellants in one case and appellees in the other, renewed the objections made by them before the county judge, and upon hearing in that court the objections of the owners were sustained and a judgment entered dismissing the petition and annulling all proceedings had thereunder; from which judgment the power company has appealed to this court.

It is stated by counsel for both parties that two questions are presented by the appeal:   First, whether the proceedings were properly had under the provisions of section 3429 *et seq.*, Rev. St. 1913 (Comp. St. 1922, sec. 8452 *et seq.*).   Second, whether the petition of the power company, the summons and notice were sufficient to confer jurisdiction on the county judge or the county court to proceed in the matter.

It is stated in argument that the district court held the proceedings to have been properly had under the provisions of the statute designated and that its judgment was based upon the ground of the insufficiency of the petition and proceedings; but the judgment as entered is a general one, not designating the ground upon which it is based, so that both propositions are here presented for review.

Without entering into a detailed consideration of the matter of statutory authority, we think it is apparent that such proceedings may properly be had under the provisions

of the statute designated. The act of 1889 (Laws 1889,
ch. 68) was entitled "An act to provide for water rights
and irrigation, and to regulate the right to the use of wa-
ter for agricultural and manufacturing purposes." The
amendatory act of 1893 (Laws 1893, ch. 40) was entitled
"An act to promote the development of water-power for
manufacturing and other industrial purposes." And the
act of 1895 (Laws 1895, ch. 69), which is in substance our
present law, was entitled, in part, "An act prescribing
regulations for the appropriation, distribution and use of
water in the construction and maintaining of canals,
ditches and storage reservoirs for the purpose of irriga-
tion, evaporation and water-power." It is true that at
that time the need primarily considered was the matter
of irrigation, which was then in its early development in
this state, but we think it equally clear that the purpose
of the act was to establish a code for the regulation of the
use and application of the waters of the state which were
made subject to appropriation, and that it was intended to
be complete for that purpose. It contains ample provi-
sions for the acquisition of sites, right of way and other
matters incidental to the use of water, provides for the in-
stitution of condemnation proceedings by sections 8452,
8453, Comp. St. 1922, and that the subsequent procedure
shall be according to the provisions of law for the condem-
nation of rights of way for railroad corporations. The
act provides that canals and other works constructed for
irrigation or water-power purposes, or both, are declared
to be works of internal improvement; and, with reference
to the priority of rights, that the use of water for domestic
purposes shall have preference over those claiming for any
other purpose, and those using the water for agricultural
purposes shall have preference over those using the same
for manufacturing purposes. While it is insisted that
what is known as "The Mill Dam Act" (Rev. St. 1913,
sec. 3974 et seq.; Comp. St. 1922, sec. 3377 et seq.) should
be followed, we do not think it necessary to determine that
question. Nothing is pointed out with reference to the act
sought to be followed in this instance wherein it is not suffi-

cient or adequate in all respects to protect the rights of the parties and afford means for determination thereof. We therefore hold that such proceedings may properly be had under the sections of the statute to which reference is made, and now appearing as section 8452 *et seq.*, Comp. St. 1922.

Upon the other branch of the case, it is strenuously argued that the petition and proceedings were not sufficient to give jurisdiction, and this position is grounded, principally, upon the propositions that the proceeding is not a judicial proceeding and that in his acts in reference to it the county judge was a ministerial and not a judicial officer; that the petition did not sufficiently or accurately describe the works of the petitioner then being or about to be constructed, nor the land to be taken; that there was no authority for allowance of the amendment to the petition and summons whereby the amount of acreage in each description, which had previously been left blank, was inserted, and that the amendment could not relate back so as to affect the notice to the landowners or cure the summons to the appraisers which had already been issued more than ten days before.

Upon the other hand, it is as vigorously asserted that the petition was sufficient, the amendment authorized, and that the allegations of the petition were such that they could be made certain, in that a skilled person, such as a surveyor, could thereby determine the quantity and location of the lands to be overflowed, and therefore were sufficient.

In support of its argument and of the petition, the appellant relies upon the cases in this court of *Fremont, E. & M. V. R. Co. v. Mattheis,* 39 Neb. 98, and *Dettman v. Pittenger,* 89 Neb. 825. These cases, we think, do not control the instant case, and the reasons therefor will be stated in connection with our consideration of other cases by which we think it is controlled.

The statute under which the proceeding is had requires that the petition in such cases shall (1) describe the lands to be crossed, (2) state the size of the ditch, canal or works,

(3) state the quantity of land which is required to be taken. In *Mattheis v. Fremont, E. & M. V. R. Co.,* 53 Neb. 681, this court held that the proceeding for condemning real estate for right of way of a railroad is not instituted in nor conducted by. the county court; that it is conducted by the county judge, the sheriff and the appraisers selected by the former; that these constitute a tribunal not to try a civil action but simply to assess the damages, and that the powers conferred upon the county judge, and the duties required of him, are not judicial but are purely ministerial. There is little, if any, conflict in the decisions of any of the courts with respect to the fact that the petition by which such proceedings are instituted must accurately describe the property sought to be taken and that such a description is necessary to confer jurisdiction. This in our judgment does not mean meticulous accuracy, but substantial accuracy—that certainty by means of which a reasonably competent person could take the instrument and therefrom, aided by such inquiries as it suggests, locate the identical property.

In *Omaha & R. V. R. Co. v. Rickards,* 38 Neb. 847, considering condemnation proceedings wherein the property had been described by governmental subdivisions only, and although it was vacant and unoccupied land, but had previously been laid out in lots and blocks and was within the corporate limits of the city, it was held that such description was insufficient and the railroad company acquired no title or rights thereby. In the more recent case of *Daily v. Missouri P. R. Co.,* 103 Neb. 219, wherein a variance in the petition consisted in a misstatement of the depth of the property sought to be condemned, it being stated as 115 feet when in fact it was 140 feet, was such a substantial inaccuracy as to render the proceedings void.

In the earlier case of *Fremont, E. & M. V. R. Co. v. Mattheis,* 39 Neb. 98, which was a rehearing of the same case reported in 35 Neb. 48, the decision was undoubtedly right upon the facts on which it was based. In that case there was in addition to the description written in the petition, a plat annexed thereto in and by which the property was

designated with sufficient certainty that it could be accurately determined. In the instant case there is no reference to any plat in the petition and none appears in the record. It appears to the writer that in this sort of case a properly drawn plat is the most accurate and illuminating method of description that could be adopted. The surface of the ground is necessarily uneven and the outlines of the land which will be overflowed, it seems, could be more accurately and plainly shown by means of a proper plat than in any other manner. The petitioner must have had the information at hand which would enable it to supply such a designation, else it would be unable to compute the acreage itself. Upon the question of acreage we do not think that the amendment aided the petition to any appreciable extent. In the description hereinbefore quoted there was designated four separate 40-acre tracts, and it is said in the petition as amended that about 41.67 acres will be taken, overflowed or damaged; which would furnish little, if any, information to the owner as to the location or form of the part of his land to be taken, or whether it was all in one body or in a number of tracts. It made a material difference to the landowner as to the exact location of the submerged portion in respect to his land and his improvements of all kinds. It is said that the petition is sufficient because a surveyor or skilled person may take it and ascertain the lands; but we have failed to discover how such a person, however skilled, could take this petition and make any definite ascertainment. There is to be a dam to the height of 16 feet across the Blue river somewhere upon the 20-acre tract of land owned by the petitioner. A great deal may, and doubtless does, depend upon the particular location of the dam and of each end thereof and its direction and length as to the overflow that will be produced thereby. The petition shows that certain lands for the distance of more than four miles upstream are to be overflowed and affected by this dam. It follows that a very little difference in the height and location of the dam will make a large difference in the land to be overflowed. The skilled person who would determine the exact location of

these lines must have a starting point, and we fail to discover one in the petition. The dam is said to be 16 feet high. From what point does the measurement proceed? Is it from the low water mark or the bed of the stream? And, if the bed of the stream, is it the lowest part thereof or is it what is sometimes called the flow line, and how determined or how may it now be found? The dam is shown to be incomplete in its construction and therefore the top of it as actually constructed cannot be ascertained from the petition. In other words, where is the base point or bench mark from which the surveyor must start in order to determine his course, distance or levels? The petition gives no information which the statute requires as to the size or location of the works, which in this instance is the dam, and the body of water which will be impounded thereby. Neither does it give any information as to the particular tracts and locality of the land to be taken from the different landowners so that they might determine, not only the land itself, but how adjacent land or improvements might be affected by the overflow, and the addition of the term "about ten acres," when applied to a 40-acre or an 80-acre tract gives no definite information.

Now, if a condemnation proceeding fully completed, because it described vacant, unoccupied land by governmental subdivisions, when it has been laid out in lots and blocks, or because it made a variance of a little less than 20 per cent. in the depth of certain property, is so fatally defective that no rights were acquired thereby, it must necessarily follow that, when objection is made in the inception of a proceeding that the description is so indefinite as that contained in the petition here, and as incapable of being made definite by anything therein stated, it is likewise fatally defective and insufficient to confer jurisdiction.

It follows from these considerations that the judgment of the district court was right, and it is

AFFIRMED.

Note—See Eminent Domain, 20 C. J. p. 575, secs. 56, 57; p. 953, sec. 364; p. 957, sec. 365.