2004 SD 14

**CITY OF SIOUX FALLS, a municipality chartered under the Constitution of the State of South Dakota, Plaintiff and Appellee,**

v.

**MISSOURI BASIN MUNICIPAL POWER AGENCY d/b/a Missouri River Energy Services, Defendant and Appellant.**

No. 22419.

Supreme Court of South Dakota.

Argued Oct. 7, 2003.

Decided Feb. 4, 2004.

R. Shawn Tornow, Sioux Falls City Attorney's Office, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Mark V. Meierhenry and Clint Sargent of Danforth, Meierhenry & Meierhenry, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

RUSCH, Circuit Judge.

[¶ 1.] This is an appeal from a judgment entered following a jury verdict in a condemnation action. Missouri Basin Municipal Power Agency (Missouri Basin)[1] argues that the trial court lacked subject matter jurisdiction because the description of the property to be acquired by the City of Sioux Falls (City), as set out in its petition, was insufficient. In addition,

Missouri Basin claims that it was denied a fair trial. We affirm.

[¶ 2.] On December 6, 2000, City began a condemnation action to acquire a strip of land for the construction of an extension of North Louise Avenue in conjunction with the State of South Dakota's I–29/Russell Street interchange project. The condemnation action was a non-quick-take eminent domain proceeding.

> One should recognize that the term "condemnation" generically describes a variety of procedures by which a sovereign exercises its power of eminent domain or takes private property. Two such procedures established by the legislature are: 1) a municipality's power to take by non-quick-take eminent domain proceedings in which the necessity to take and the value of the property taken are determined, SDCL ch 21–35; and 2) quick-take proceeding as applicable to municipalities described both in SDCL 21–35–9 and SDCL 31–19–23 et seq. These quick-take proceedings are not mutually exclusive. SDCL 31–19–40.

> In non-quick-take condemnation cases, the municipality files a petition pursuant to the provisions of SDCL 21–35–2. No right to possession of the property is obtained by the condemning authority until it pays the full amount of condemnation judgment and costs. A City may dismiss the action after a just compensation verdict but *before* judgment is entered. *City of Aberdeen v. Lutgen*, 273 N.W.2d 183, 185 (S.D.1979).

*City of Sioux Falls v. Johnson*, 2001 SD 108, ¶¶ 10, 11, 632 N.W.2d 849, 852–53 (footnote omitted). As a result of utilizing this non-quick-take procedure, City did not obtain immediate possession of the property and could not begin construction of the

---

1. Missouri Basin is a municipal power agency that provides supplemental electricity to 55 member communities in South Dakota, North Dakota, Minnesota, and Iowa. The company's corporate offices have been located in Sioux Falls since the 1960s.

North Louise Avenue project until after the trial at issue here. Under the non-quick-take procedure, City reserved the right to change its mind about building this street project if the land was too expensive. However, if City had changed its mind and dismissed this condemnation proceeding after the trial, the property owner would have been entitled to their costs including reasonable attorney's fees. *City of Aberdeen v. Lutgen, supra.*

[¶ 3.] By these proceedings City sought to acquire approximately 2.9 acres which lay diagonally across the middle of a 14 acre tract owned by Missouri Basin. Most of the property that City sought to acquire was vacant land. Neither Missouri Basin's office building nor its employee parking lot was affected by the taking, but it did include a portion of Missouri Basin's visitor parking lot.

[¶ 4.] City's condemnation petition identified the land to be acquired as:

Lot H1 of Tracts 1 and 2 of Missouri Basin Municipal Power Agency Addition to the City of Sioux Falls, Minnehaha County, South Dakota (containing approximately 126,418 square feet or 2.902 acres), as shown on Exhibit A of Resolution 101–00.

In addition, a map or diagram accompanied the petition. Neither the petition nor the map showed what access would be allowed to the remaining property after the taking but it did show that the new North Louise Avenue, which would run through Missouri Basin's property, would not be a controlled access road. As a non-controlled access road, City will allow whatever access a landowner wants, provided that it complies with City's engineering design standards. The map also did not show such things as elevation or drainage plans.

[¶ 5.] Prior to the condemnation, access to the visitor parking lot was from a service road running along Russell Street. Included in the condemnation taking area was the entrance to that parking lot. Twenty-one months before the trial, City provided Missouri Basin with six different alternative proposals for reconfiguring the visitor parking lot. Each of those proposals utilized the existing parking lot and entrance into the building and each showed access to the parking lot from the Russell Street service road in approximately the same location where it was eventually constructed.[2]

[¶ 6.] Both City and Missouri Basin employed appraisers to assist in valuing the taken property. Missouri Basin hired Deane Davenport, and City employed Steven Shaykett. The two appraisers arrived at similar values for the property taken with Davenport finding a loss in value of $392,000 and Shaykett finding a loss in value of $306,000. However, Davenport also claimed that there would be severance damages of $311,280 in order to remodel Missouri Basin's building to construct a new front entrance to access the new visitor parking lot. As a result he claimed that total just compensation should be $703,280. Shaykett saw no need to move the parking lot and no need for a new front entrance.

[¶ 7.] The condemnation action was tried to a jury on January 30 through February 1, 2002. Although Missouri Basin's appraiser testified that just compensation for the taking was $703,280, Merlin Sawyer, Missouri Basin's Chief Financial Officer, testified that just compensation for the property taken was $1,417,105. One of

2. Although not part of the record at trial, the parties have since supplemented the record on this appeal to include Exhibits AA, BB, CC and DD which show the parking lot and access as it was actually constructed after the trial.

the witnesses that City called was Mark Wiederrich, an engineer from HDR Engineering. Wiederrich had prepared the plans for the Louise Avenue/Russell Street interchange and had also prepared the six different alternative proposals for reconfiguring the Missouri Basin visitor parking lot. These plans kept the visitor parking lot . in approximately the same location where it was previously located and did not necessitate a new front entrance or any remodeling. Copies of these plans had been furnished to Missouri Basin in April 2000.

[¶ 8.] At the close of the trial, Missouri Basin moved to dismiss the condemnation action because the petition did not adequately describe the property to be taken, and because the evidence presented at trial by City did not conform to the petition's description of the taking. The motion was denied and the case was submitted to the jury which returned a verdict for Missouri Basin in the sum of $316,500.[3] Later, Missouri Basin moved for a new trial. The trial court denied this motion.

### STANDARD OF REVIEW

[¶ 9.] Jurisdictional challenges are reviewed de novo. State ex rel. *Le-Compte v. Keckler,* 2001 SD 68, ¶ 6, 628 N.W.2d 749, 752 (citing *Red Fox v. Hettich,* 494 N.W.2d 638, 642 (S.D.1993)) (citing *State v. Spotted Horse,* 462 N.W.2d 463, 465 (S.D.1990), *cert denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991)). Since questions of subject matter jurisdiction have no time limitation, they may be raised for the first time on appeal. *Barnes v. Matzner,* 2003 SD 42, ¶ 10, 661 N.W.2d 372, 375; *Wuest v. Winner School Dist.* 59–2, 2000 SD 42, ¶ 15, 607 N.W.2d 912, 916.

### SUBJECT MATTER JURISDICTION.

[¶ 10.] "Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void." *Barnes,* 2003 SD 42 at ¶ 10, 661 N.W.2d at 375. "It is 'conferred solely by constitutional or statutory provisions ... [and] can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ.'" *Id.* (quoting *Freeman v. Sadlier,* 1998 SD 114, ¶ 10, 586 N.W.2d 171, 173).

[¶ 11.] Missouri Basin contends that the trial court in this case lacked subject matter jurisdiction because City failed to adequately describe the property to be taken in its condemnation petition. South Dakota law requires that in order to maintain an action "taking or damaging private property for public use," the condemning authority must file a petition in "the circuit court for the county in which the property to be taken or damaged is situated." SDCL 21–35–1. The petition "shall contain a description of the property to be taken or damaged. SDCL 21–35–2." If the petition does not contain an adequate description of the property to be taken, the court is without jurisdiction to entertain the condemnation action. *Consumers Public Power Dist. v. Eldred,* 146 Neb. 926, 22 N.W.2d 188, 196 (Neb. 1946). The statute does not clarify how specific or detailed the property description must be.

[¶ 12.] This is an issue of first impression in South Dakota, but other states have considered similar cases. If a petition describes the property to be taken so inaccurately that it is "apt to mislead the appraisers in the assessment of dam-

---

**3.** A judgment was entered on April 8, 2002, which vested City with title to the property described in City's petition, and the proposed street construction project was allowed to proceed at that time.

ages," the condemnation proceedings would be void. *Dailey v. Missouri Pac. R. Co.*, 103 Neb. 219, 170 N.W. 888, 889 (Neb. 1919). The description "must be such that a surveyor could locate the parcel described without the aid of extrinsic evidence." *Consumers Public Power Dist. v. Eldred*, 22 N.W.2d at 196. However, the Nebraska Supreme Court also said "[t]his does not mean the exactness required by deeds of conveyance but substantial accuracy and a certainty by reason of which the identical property can be definitely located," and "[i]t is no objection that the description is incomplete or unintelligible without consultation with a map or plan, if the map is referred to in the description and is filed with it, and taken together the map and the description make clear what is intended to be included in the taking." *Id. In Re Blue River Power Co.*, 112 Neb. 500, 199 N.W. 788, 790 (Neb.1924), the Nebraska court stated:

> There is little, if any, conflict in the decisions of any of the courts with respect to the fact that the petition by which such proceedings are instituted must accurately describe the property sought to be taken and that such a description is necessary to confer jurisdiction. This in our judgment does not mean meticulous accuracy, but substantial accuracy—that certainty by means of which a reasonably competent person could take the instrument and therefrom, aided by such inquiries as it suggests, locate the identical property.

In *Coastal Indus. Water v. Celanese Corp.*, 592 S.W.2d 597, 600 (Tex.1979), the Texas Supreme Court, quoting *Wooten v. State*, 142 Tex. 238, 177 S.W.2d 56, 57 (1944), noted "the certainty required in the description of the land in a condemnation proceeding 'is of the same nature as that required in conveyances of land, so that a surveyor could go upon the land and mark out the land designated.'" If the description is sufficiently certain that a surveyor could locate the tract, the fact that it might contain "a false and contradictory element of description is harmless." *Boone v. Panola County*, 880 S.W.2d 195, 196 (Tex. App.–Tyler, 1994) (quoting *Roberts v. County of Robertson*, 48 S.W.2d 737, 738 (Tex.Civ.App.–Waco 1932 writ ref'd)).

[¶ 13.] In this case, City's petition described the property to be taken as Lot H1 of Tracts 1 and 2 of Missouri Basin Municipal Power Agency Addition to the City of Sioux Falls, Minnehaha County, South Dakota (containing approximately 126,418 square feet or 2.902 acres), as shown on Exhibit A of Resolution 101–00. In addition, a map or diagram accompanied this description. Missouri Basin could determine with a reasonable degree of accuracy from the description used in the petition and from the accompanying map what land City intended to acquire. The description used in the pleadings together with the attached map are sufficiently accurate and afford that certainty by which a surveyor could use them and locate the identical property.

[¶ 14.] Missouri Basin contends that the petition did not contain an adequate description because it did not describe what access would be allowed to Missouri Basin's property after the construction of North Louise Avenue through the middle of its property. In effect Missouri Basin is arguing that City can only take property if City specifically describes what the remaining access will be in its condemnation petition.[4] There is no case law which requires this. While access or

---

4. Under some circumstances landowners are entitled to compensation for a loss of access to their property. *State v. Henrikson*, 1996 SD 62, ¶ 15, 548 N.W.2d 806, 810 (citing *Hurley v. State*, 82 S.D. 156, 143 N.W.2d 722, 724 (S.D.1966)).

lack of access may be a matter which will affect the value of property, there are other items which will affect just compensation as well. *See Schuler v. Board of Supervisors,* 12 S.D. 460, 81 N.W. 890 (1900) and *Highway Comm. v. Bloom,* 77 S.D. 452, 93 N.W.2d 572 (1958). It would be impracticable to require that a condemnation petition describe every possible matter that could affect a property's valuation.

[¶ 15.] In addition, it does not appear that Missouri Basin suffered a loss of access. Prior to the construction, Missouri Basin had no access to this portion of North Louise Avenue because the street did not exist.[5] Under this construction project, North Louise Avenue did not become a controlled access road. After the construction, North Louise Avenue became a conventional road with access on both sides. Questions of where access points or curb cuts will be located will be resolved by application of the City building code just as they would be for any other landowner in the City. There was no evidence that under the City building code, Missouri Basin could be completely deprived of access. The record does not establish that landowner's access will be unreasonably diminished or interfered with which is necessary for a recovery. *State v. Henrikson,* 1996 SD 62 at ¶ 15, 548 N.W.2d at 810. Missouri Basin's claim that City took all of their access to their property is inaccurate.

## FAIR TRIAL

[¶ 16.] Missouri Basin asked the trial court for a new trial on the

grounds of surprise, irregularity in the proceedings, and newly discovered evidence. SDCL 15–6–59(a)(3) and (4). In respect to a motion for a new trial, this Court has previously stated:

> Applications for new trial based solely on the grounds of newly discovered evidence are frowned upon by the courts. *Piper v. Barber Transportation,* 79 S.D. 353, 112 N.W.2d 329 (1961); *Gaines v. White,* 1 S.D. 434, 47 N.W. 524 (1891). In order to grant such a motion based solely on this ground, the applicant must demonstrate first that it is newly discovered evidence and secondly that it could not, by reasonable diligence, have been determined and produced at the trial and that it would be believed by the jury and would produce a different result.

Basin Elect. *Power v. Gosch,* 90 S.D. 222, 227–228, 240 N.W.2d 96, 99 (1976). However, the discovery statutes exist to eliminate trial by ambush. *State v. Sorenson,* 2000 SD 127, ¶ 9, 617 N.W.2d 146, 148.

[¶ 17.] Specifically, Missouri Basin claims it was denied a fair trial because City provided false discovery information and failed to disclose that the assumptions of both appraisers regarding the nature and extent of the taking were incorrect and inconsistent with other evidence which City intended to present at trial; that City failed to supplement its discovery responses to Missouri Basin; and that City amended its taking after Missouri Basin had rested its case.

---

5. As City's appraiser stated in his appraisal: New Louise Avenue route through the subject, will provide subject with access points along the new frontage. In the before posture, access was possible along approximately 760 feet of frontage on Louise Avenue and 638 feet of frontage along Russell Street service road. New frontage will total approximately 750 feet on each side of the new Louise Avenue, but the frontage on the old Louise Avenue will be approximately 180 feet less or 580 feet. Frontage along Russell Street frontage road will be the same, except for the 100 feet acquired in right-of-way, leaving frontage of approximately 538 feet. New intersection of Louise Avenue and Russell Street will be a controlled intersection.

[¶ 18.] These arguments by Missouri Basin relate to the visitor parking lot. Missouri Basin's request for $311,280 severance damages was based upon a claim that their building would have to be remodeled and a new front entrance constructed. Missouri Basin claimed that the remodeling would be necessary because the visitor parking lot would have to be moved from its existing location southeast of the building to a new location southwest of the Missouri Basin building. Missouri Basin claimed that this relocation of the visitor parking lot would require substantial and expensive changes to the building, including relocation of the main entrance to the building and remodeling of the interior. Consequently, Missouri Basin's appraiser included severance damages or cost to cure damages of $311,280 for remodeling, resulting in a claim that just compensation should be a total of $703,280. City disputed the necessity of moving the visitor parking lot, relocating the front entrance, or remodeling the building. By its verdict the jury obviously concluded that moving the visitor parking lot, relocating the front entrance and remodeling the building were unnecessary.

[¶ 19.] Missouri Basin claims that it was deprived of a fair trial because its expert appraiser, Davenport, assumed that the visitor parking lot and front entrance would have to be moved which assumption turned out to be untrue.[6] Missouri Basin claims that City's appraiser, Shaykett, also assumed that the existing driveway would be eliminated and a new driveway to Louise Avenue would have to be developed. Missouri Basin argues that, as a result, it was surprised at trial when City presented evidence that the existing driveway could continue to be used, although altered slightly, and that the existing visitor parking lot need not be totally removed and relocated, but could be extended to the southwest and reconfigured to provide the same or more visitor parking with continuing direct access to the existing front entrance to the building.

[¶ 20.] The record does not support Missouri Basin's claims. Missouri Basin's appraiser, Davenport, testified that he had seen some drawings that had access from the east (Russell Street) and others that did not and had been told that access was still up in the air, so he assumed there would not be any access from the east.[7] However, in his written appraisal, Davenport stated:

> Access to the site is by way of one point on West Russell Street frontage road, and two on the Louise Avenue side prior to the taking. To my understanding, no access is to be lost during or after this road control project construction. *After the taking the original access will be intact* and access along the new roadway will be allowed. (emphasis supplied).

[¶ 21.] Although Missouri Basin claims Davenport based his appraisal on erroneous assumptions about the location of access points, and that City should have known this, the written appraisal does not support this claim. City's appraiser, Shaykett, indicated in his appraisal that access to the visitor parking lot would be from Louise Avenue but testified that access could be either from Louise Avenue

6. As it was finally constructed after the trial in this case, the access to the visitor's parking lot was from the Russell Street service road, almost exactly where it had previously been. The visitor parking lot was also essentially where it had been and there was no need for a new front entrance.

7. However at another time Davenport testified, "Quite frankly, I don't know I inquired specifically about access right here."

or Russell Street. However, both his report and his testimony indicated that the visitor parking lot could remain in the same location where it had been and that there was no need for a new front entrance or remodeling of Missouri Basin's building.

[¶ 22.] Although both parties accuse the other of failing to respond to discovery requests in a timely manner, the record does not include any documentation of interrogatories dealing with access to the visitor parking lot that were unanswered by City. Missouri Basin's argument regarding discovery lacks any factual support in the record.

[¶ 23.] At a hearing on January 14, 2002, when City refused to stipulate to the appraiser's assumptions, there was no list of assumptions that City was asked to agree to. The judge indicated that he did not know what the assumptions were. At the time Missouri Basin's attorney said that the singular big issue was whether an existing sewer easement in favor of City was going to be moved to the location of the road. No mention was made of any assumptions dealing with access to the visitor parking lot.

[¶ 24.] It is clear that prior to the trial, both parties knew that the issue of the necessity of moving the parking lot and front entrance would be an issue of contention. Prior to trial, City moved to prevent Davenport from testifying about the $311,280 severance damages for the new front entrance and remodeling because it "lack[ed] foundation, is unduly speculative and is based on unreliable hearsay which can not be considered." Missouri Basin was clearly aware that City was disputing Davenport's assumption that the parking lot would have to be moved, necessitating a new front entrance and remodeling.

[¶ 25.] It is unclear why Missouri Basin and their appraiser, Davenport, assumed that it would be necessary to move the visitor parking lot. Twenty-one months before trial City provided Missouri Basin with six alternative proposals for reconfiguring that parking lot. Each of these plans utilized the existing parking lot southeast of the building and each of these plans showed that access to the visitor parking lot would be from the Russell Street service road. At trial Missouri Basin introduced Exhibit 8, a drawing relied upon by their expert engineer, which shows the parking lot and access as it was finally constructed. Davenport also included this drawing in his appraisal so he was aware of it. Finally, Sawyer, Missouri Basin's Chief Financial Officer, admitted that Missouri Basin had always assumed that there would be access to the visitor parking lot off the Russell Street service road.

[¶ 26.] Missouri Basin can not claim that it was surprised by the testimony that access to the visitor parking lot would remain where it had been, off the Russell Street service road, that the parking lot would not have to be moved, and that no new front entrance would have to be constructed. The criteria for a new trial have not been satisfied. Missouri Basin has not produced sufficient evidence to support its claim that it was denied a fair trial.

[¶ 27.] The judgment is affirmed.

[¶ 28.] GILBERTSON, Chief Justice, SABERS, KONENKAMP, and ZINTER, Justice, concur.

[¶ 29.] RUSCH, Circuit Judge, for MEIERHENRY, Justice, disqualified.