#25252-aff in pt & modified in pt-DG

**2010 SD 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LAWRENCE COUNTY, a political
Subdivision of the State of
South Dakota,                                        Plaintiff and Appellee,

v.

CHERIE L. MILLER, MILTON E.
MITCHELL and HELEN B. NEUFELD,
co-executors of the estate of
ELVIN E. MITCHELL and CHRIS MILLER,        Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

THOMAS E. BRADY of
Brady & Pluimer, PC
Spearfish, South Dakota
and
BRUCE OUTKA
Deadwood, South Dakota                    Attorneys for plaintiff
                                          and appellee.

KENNETH E. BARKER
MICHAEL A. WILSON of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota               Attorneys for defendants
                                          and appellants.

* * * *

ARGUED MARCH 24, 2010

OPINION FILED **07/21/10**

#25252

GILBERTSON, Chief Justice

[¶1.] Lawrence County (County) filed a condemnation petition for a runway expansion project to allow the use of Class BII Large aircraft at Black Hills Airport/Clyde Ice Field (airport). The matter was scheduled for a jury trial after County and the landowners could not agree on the value of the 206 acres condemned by the petition. County filed a motion for partial summary judgment to preclude private landowners from introducing evidence and testimony regarding the effects of landing and takeoff height restrictions on the remainder of the adjacent land. County did not draft or enact landing and takeoff height restriction ordinances at the time the condemnation petition was filed, but could be required to do so in the future by the Federal Aviation Administration (FAA). Landowners resisted and also sought to introduce evidence of additional height restrictions that could be imposed if the airport were to expand to permit Class C and D aircraft operations. The trial court granted County's motion. Landowners appeal. We affirm Issue 1 but modify the trial court's ruling as to Issue 2 because landowners' claim was not a justiciable controversy at the time of trial, but may become so at some point in the future.

**FACTS**

[¶2.] In September 2007, County filed a petition to condemn approximately 206 acres of real property for an airport runway expansion project. The 206 acres, located north of and contiguous to the airport, were part of a larger parcel of approximately 515 acres owned by the estate of Elvin E. Mitchell and Cris Miller

#25252

(Owners). County's resolution 2006-38 proclaimed its purpose in condemning the land:

> AND WHEREAS, the purpose of the proposed action is to enhance the utility and safety of Black Hills Airport/Clyde Ice Field to accommodate current and projected levels of aviation activity by the design aircraft family and provide Instrument Flight Rules capability. The need for the proposed action is related to compliance with FAA standards for BII Large aircraft, specifically runway length and instrument approaches.

The resolution described a taking of only the 206 acres of Owners' 515-acre tract. The resolution did not include any reference to the airspace above the remaining 309 acres.

[¶3.] The 515-acre tract had been used for ranching for three generations at the time of the condemnation. However, the highest and best use of the land, as determined by both parties, was low density, or large-lot, residential use due to its proximity to a development area around Spearfish, South Dakota. This major growth area had experienced significant expansion in both population and development in the prior decade.

[¶4.] The parties could not agree on the "before" and "after" value of the complete 515-acre tract from which the 206 acres were taken. Owners' appraiser concluded the value of the taking was $1,683,000. Owners' appraiser did not consider any diminution in the value of the remaining 309 acres in the event County's ordinances imposed height restrictions for the landing and takeoff for Class BII Large aircraft, or if it were to permit larger aircraft of Category C and D level aircraft to use the runway, which could impose additional height restrictions on the remaining acreage at some point in the future. County's appraiser also did

not consider any diminution in value for the remaining 309 acres due to the potential for future height restrictions. County's appraised value of the condemned 206 acres was $1,173,058. Trial on the amount of damages for the taking was held on April 2, 2009. The jury returned a verdict for the landowners for the taking of the 206 acres in the amount of $1,218,983.65.

[¶5.]        Prior to the trial, on November 5, 2008, County filed a motion for partial summary judgment on the alleged effect on Owners' remaining 309 acres. County asked in its motion "that any claim of taking by alleged or supposed loss of use by reason of alleged height restrictions or any other collateral impact of the runway extension project be dismissed." It further sought an order precluding Owners from arguing or offering evidence of any such claim during the jury trial on the value of the 206 condemned acres. County also sought to preclude the admission of any additional expert witnesses or reports as the parties were required to disclose expert witnesses by March 31, 2008, and any extension would delay the trial beyond the scheduled date.[1]

[¶6.]        Owners resisted the motion and hired Clyde Pittman, a national expert in determining structural height limitations resulting from FAA regulations, to evaluate the impact of the runway expansion on the remaining 309 acres. His report indicated that the extension of the runway for Class BII Large aircraft would result in height restrictions on the remaining 309 acres in order to comply with FAA takeoff and landing patterns and safety requirements. Pittman also indicated that

---

1.    County also subsequently filed a motion in limine seeking an order precluding the above-mentioned evidence from being admitted at trial.

the expansion as planned would enable the use of Category C level aircraft without requiring the condemnation of more land, but would impose additional height restrictions on the remaining 309 acres. The use of Category C aircraft would enlarge the airport circling area by an additional 0.2 nautical miles from the runway and extend out farther over the remaining 309 acres. If County eventually expanded the airport for the use of Category D level aircraft, the circling area would extend 2.3 nautical miles from the runway. Pittman's report further indicated such an expansion, if undertaken, would extend completely over the remaining 309 acres. He also opined the expansion would subject the 309 remaining acres to actual physical invasion by aircraft arriving at and departing from the airport. FAA regulations would in turn impose height limitations on the remaining 309 acres. However, no evidence was presented by Owners of the diminution in value of the remaining 309 acres due to height restrictions that might be imposed in the future.

[¶7.] The trial court granted County's motion for partial summary judgment and Pittman's report was not considered by the jury in determining the value of the condemned 206 acres. The trial court concluded that Pittman's report was conjecture and speculation. It further concluded that Owners' evidence of possible future airspace intrusion was a "mere general allegation[ ]" and did not set forth specific facts to show genuine issues of material fact for trial on the issue of the collateral impact of the runway extension project.

[¶8.] Owners appeal raising the following issues:

1. Whether a factual basis existed to support a claim for additional compensation for the invasion of the airspace over Owners' remaining 309 acres.

2.      Does the decision of the trial court preclude future claims by Owners for the taking of air space over the remaining 309 acres.

## STANDARD OF REVIEW

[¶9.]      Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Devel. Co., Inc., 2010 SD 15, ¶16, 779 NW2d 148, 154-55 (quoting Discover Bank v. Stanley, 2008 SD 111, ¶16, 757 NW2d 756, 761-62).  On review, this Court will affirm the trial court's grant of a motion for summary judgment when there are no genuine issues of material fact and the legal questions have been correctly decided.  *Id.*  We view all reasonable inferences drawn from the facts in favor of the non-moving party.  *Id.*  "The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law."  *Id.*

## ANALYSIS AND DECISION

[¶10.]      **1.      Whether a factual basis existed to support a claim for additional compensation for the invasion of the airspace over Owners' remaining 309 acres.**

[¶11.]      SDCL 50-13-3 establishes certain private property rights over airspace.  "The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the

right of flight described in section 50-13-4."[2] SDCL 50-13-3. Such property rights, however, have altitudinal limits.[3]

[¶12.]        Under Article VI, section 13 of the South Dakota Constitution,

"[p]rivate property shall not be taken for public use, or damaged without just

compensation[.]"

> Accordingly, the damage clause of the South Dakota Constitution allows a property owner to seek compensation "'for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in

---

2.      SDCL 50-13-4 provides:

> Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath.

3.      SDCL 50-13-11 provides:

> There is hereby established and exists pursuant to acts of Congress (49 USC §§ 1301-1302, 1303-1304, and 1347-1348(a)(c)) and confirmed by this enactment a public highway for air commerce in the navigable air space over all the land in South Dakota wherein the public right of freedom of air navigation and transit by aircraft is herein established, defined and confirmed.

However, SDCL 50-13-12 provides:

> The air space established by § 50-13-11 consists of the space above an altitude of one thousand feet above the highest obstacle within a horizontal radius of two thousand feet from the aircraft to the ground when over congested areas such as municipalities or settlements, or an open air space assembly of persons, and over other than a congested area the air space above an altitude of five hundred feet above the surface except over open water or sparsely populated areas, which in such event the freedom of transit of an aircraft is no closer than five hundred feet over any person, vessel, vehicle, or structure.

> connection with and as incidental to the ownership of the land itself.'"

Hall v. State, 2006 SD 24, ¶14, 712 NW2d 22, 27 (quoting Hurley v. State (*Hurley II*), 82 SD 156, 143 NW2d 722, 725 (1966)). However, the ultimate burden of proof as to damages in a takings claim rests upon the landowner. Basin Elec. Power Co-op., Inc. v. Cutler, 88 SD 214, 217 NW2d 798, 801 (1974).

[¶13.] Owners argue County, as the moving party, was required to show the absence of genuine issues of material fact before it triggered Owners' burden to establish genuine issues of material fact. They further argue the trial court improperly shifted the burden to Owners, as the non-moving party resisting County's motion for summary judgment, by requiring Owners to show genuine issues of material fact before allowing the issue to go to the jury.

[¶14.] While we often distinguish between the moving and non-moving party in referring to the parties' summary judgment burdens, the more precise inquiry looks to who will carry the burden of proof on the claim or defense at trial. Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Gulbranson Devel. Co.,* 2010 SD 15, ¶16, 779 NW2d at 155 (quoting Zephier v. Catholic Diocese of Sioux Falls, 2008 SD 56, ¶6, 752 NW2d 658, 662-63). The resisting party is required to "show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." Bordeaux v. Shannon County Schools, 2005 SD 117, ¶14, 707 NW2d 123, 127 (quoting Chem-Age Industries, Inc. v. Glover, 2002 SD 122, ¶18, 652 NW2d 756, 765). The resisting party will be unable to overcome a motion

for summary judgment with mere general allegations and denials. *Id.* (quoting Hughes-Johnson Co. v. Dakota Midland Hosp., 86 SD 361, 195 NW2d 519, 521 (1972)).

[¶15.] Accordingly, Owners were required to present facts, rather than "unsupported conclusions and speculative statements, which do not raise a genuine issue of fact." *See id.* (quoting Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc., 511 NW2d 567, 569 (SD 1994)). The trial court concluded in its memorandum decision that the evidence presented by Owners through their expert witness Pittman was insufficient to show that the airspace over their remaining 309 acres would be invaded "in such a manner as to prohibit the use of land for any purpose, thereby resulting in a complete loss to the landowner." It further concluded there was no evidence submitted to support Pittman's opinion that after the taking Owners' "property is one of few properties owned privately which is subject to severe and carefully guarded height limitations," or how the alleged height limitations would affect the use of Owners' land.

[¶16.] We agree with the trial court that Owners submitted nothing more than unsupported conclusions and speculative statements in resistance to County's motion for partial summary judgment. This Court's eminent domain precedents have held that severance damages will not be automatically presumed where part of the parcel is taken or damaged. David Gilbertson, Note, *Condemnation of Agricultural Land in South Dakota*, 20 SD Law Rev 623, 632 (1975).

> Damages in an eminent domain proceeding must include present and prospective damages caused by the condemnor but not those which are speculative or remote or damages which are sentimental only. Speculative damages are those in which

> either the very existence of the damage is doubtful or the pecuniary seriousness of the damages is grossly conjectural. The prospective uses of the property which may be considered in establishing just compensation must be so reasonably probable as to have an effect on the present market value of the land; a purely imaginative or speculative use cannot be considered. There must be a possibility significant enough to be a practical consideration which would actually influence prices.

*Id.* (citations omitted).

[¶17.]     Here, the lack of evidence goes, not to the issue of severance damages, but to the alleged invasion itself. We note that there is nothing in the condemnation documents filed by County or subsequent pleadings that sought to limit in any way the use of the airspace over Owners' remaining 309 acres. All that Owners provided was speculation about a potential future invasion of the airspace and no evidence as to what damage would result to the remaining 309 acres by any ordinances that County would enact for the runway expansion. While Pittman's testimony indicated that other conditions would need to occur in the future before some of the damages might result, Owners provided no evidence to support Pittman's contention that these conditions would occur, or if so, when. First, County would have to enact ordinances for Class BII Large aircraft that imposed height restrictions on the 309 remaining acres. Next, Pittman's affidavit stated that it was "*expected* that this extension will support larger and faster aircraft at least to Category 'C' level . . . *[if] the plan is* to land Category 'D' aircraft," and "[i]t *is also not beyond reason that there is a plan* to add more complex instrument procedures." (emphasis added.) However, County's resolution made it clear the current expansion required only the taking of the 206 acres and the airspace above that portion of the 515-acre parcel for the purpose of permitting Class BII aircraft to

utilize the airport. Because Owners failed to present evidence to support the claim that Class BII Large aircraft would infringe upon the airspace over the remaining 309 acres, or that Category C and D aircraft would use the airport, there was no damage to the remaining 309 acres at the time of the condemnation of the 206 acres.

[¶18.]    Owners analogize the facts of their case to the facts in *Benson v. State*, 2006 SD 8, 710 NW2d 131. In *Benson*, landowners brought an inverse condemnation action against the State in response to the enactment of SDCL 41-9-1.1, which decriminalized the shooting of small game "that are in flight over private land if the small game has either originated from or has taken flight from the highway or public right-of-way or if the small game is in the process of flying over the highway or public right-of-way." *Id.* ¶8, 710 NW2d at 138 (quoting SDCL 41-9-1.1). The landowners in *Benson* alleged the shots fired over their land invaded the airspace over their property to such a degree that a per se regulatory taking occurred for which just compensation was required. *Id.* ¶47, 710 NW2d at 149. In *Benson* it was undisputed that some shots were fired over landowners' property during hunting season. *Id.* ¶52, 710 NW2d at 151-52. This Court ultimately determined that the conduct was that of private citizens engaged in hunting activities, rather than actions of the State. *Id.* ¶83, 710 NW2d at 161. However, although the intrusion onto the land in *Benson* was real, it was not as a result of the State's enactment of SDCL 41-9-1.1. *Id.*

[¶19.]    The authority granted to County for condemnation is set forth in SDCL ch. 21-35. In order to invoke the right to condemn private property, SDCL 21-35-2

requires County's petition to "contain a description of the property to be taken or damaged." It shall also set forth "the purpose for which the property is to be taken or damaged." Here, the petition only sought to acquire the 206 acres with its stated purpose being for the use of BII Large aircraft and Owners have not shown an actual intrusion upon the remaining 309 acres by Class BII Large, Class C, or Class D aircraft at this time. Nor have Owners shown that County has taken any affirmative steps to allow Class C and Class D aircraft to use the runway. All that Owners allege is that the enactment of undrafted ordinances could impose height restrictions over the 309 remaining acres. There is no comparison between the actual shots fired in *Benson* to the theoretical use of an airfield by aircraft that are not currently permitted to use the airport.

[¶20.] The trial court concluded Owners failed to show they would be able to place sufficient evidence in the record at trial to create a question of material fact on the type and amount of damage to the remaining 309 acres from County's airport expansion plan. Owners had the burden to place such evidence into the record in order to effectively resist County's motion, as Owners would have been required to establish the 309 acres were damaged and the diminution in value at trial. *See id.* The trial court was correct when it found that Owners failed to adequately resist County's motion for summary judgment with regard to severance damages resulting from an air space taking to the remaining 309 acres.

[¶21.] With regard to calculating the alleged damages, without a formal declaration of taking by the governmental entity, "the correct date or time that compensation is to be ascertained is the date of taking or damaging-or here the

substantial interference with the owner's [property] rights." Hurley v. State (*Hurley I*), 81 SD 318, 134 NW2d 722, 784-85 (1965). Here, that event has not yet occurred and may never occur if County does not enact ordinances that impose airspace restrictions. Severance damages of the air rights from the remaining 309 acres are not "'manna from heaven'; it must be based on actual loss of value." *See Basin Elec. Power Co-op, Inc.*, 88 SD 214, 217 NW2d at 801.

[¶22.] **2. Does the decision of the trial court preclude future claims by Owners for the taking of air space over the remaining 309 acres.**

[¶23.] Owners contend that while a real injury has been suffered by the remaining 309 acres, the extent of the injury was unknown at the time County filed its motion for partial summary judgment. Therefore, Owners argue there can be no preclusive effect preventing a subsequent condemnation or inverse condemnation action if County enacts future restrictive regulations pertaining to Class BII Large or Category C and D aircraft. County argues Owners may have had a viable claim for a taking of airspace over the remaining 309 acres, but failed to submit admissible evidence of the diminution, if any, in its market value. Thus, County contends the claim was not factually supported, but nonetheless could have been, and as a result the claim is precluded in the future under the doctrine of res judicata because the order granting summary judgment was a final judgment on the merits of Owners' claim. In the previous issue we concluded there was no current factual basis to support a claim for damages to the airspace above the remaining 309 acres. There remains the issue of the legal effect of the trial court's dismissal of the unsupported claim by summary judgment.

[¶24.] As this Court recently noted, "[t]he doctrine of res judicata bars any 'attempt to relitigate a cause of action by the parties or one of the parties in privity to a party to an earlier suit.'" Dakota Plains AG Center, LLC v. Smithey, 2009 SD 78, ¶19, 772 NW2d 170, 179 (quoting Speck v. Federal Land Bank of Omaha, 494 NW2d 628, 633 (SD 1993)). Res judicata "embodies both *merger* and *bar*." *Id.* (quoting Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc., 336 NW2d 153, 157 (SD 1983)). The preclusive effect of res judicata extends to "an *issue actually litigated or which could have been properly raised and determined* in a prior action." *Id.* Furthermore,

> [i]n order for res judicata to apply, the cause of action in the prior litigation must be the same as the cause of action in the subsequent litigation. This Court adopted the broad test in *Hanson v. Hunt Oil Co.,* 505 F2d 1237 (8thCir 1974), for determining if both causes of action are the same. A cause of action is comprised of the facts that gave rise to, or established, the right the party seeks to enforce. If the wrong sought to be redressed is the same in both actions, then res judicata applies.

*Id.* ¶20, 772 NW2d at 179-80 (citing *Black Hills Jewelry Mfg. Co.*, 336 NW2d at 157) (internal citations omitted).

[¶25.] In the instant case, County's motion for partial summary judgment requested an order from the trial court "dismissing a purported or alleged claim of taking by reason of alleged or purported height restrictions that [Owners'] expert or experts believe might occur upon or after completion of the runway extension project on Black Hills Clyde Ice Field." County further requested the order declare "that any claim of taking by alleged or supposed loss of use by reason of alleged height restrictions or any other collateral impact of the runway extension project be dismissed, and that [Owners] be precluded from arguing or offering evidence of any

such claim." The trial court granted County's motion for partial summary judgment and stated "that [Owners'] evidence of *possible future airspace intrusion* are [sic] 'mere general allegations' which do [sic] not set forth specific facts to prevent issuance of a judgment." (emphasis added.)

[¶26.]      Under a claim of inverse condemnation, owners are entitled to just compensation for a de facto taking of a portion of their remaining property at the point such a taking actually occurs. *Hurley I*, 81 SD 318, 134 NW2d at 784-85. "Landowners . . . have a claim of right to their property. Thus, their allegation that the [County's] actions result in an unconstitutional taking is sufficient to present a justiciable controversy." *Benson*, 2006 SD 8, ¶16, 710 NW2d at 140. Such a claim may be brought directly by a landowner and does not wait upon a formal condemnation action by the governmental entity which may, or may not, ever occur. *Hurley I*, 81 SD 318, 134 NW2d at 784-85.

[¶27.]      A taking of an airspace easement over private property occurs when the actions of the government create a "direct and immediate interference with the use and enjoyment of the land." Branning v. United States, 228 CtCl 240, 654 F2d 88, 97 (1981) (citing Lacey v. United States, 219 CtCl 551, 553, 595 F2d 614, 615 (1979)). *See also* Griggs v. Allegeny County, 369 US 84, 82 SCt 531, 7 LEd2d 585 (1962); United States v. Causby, 328 US 256, 66 SCt 1062, 90 LEd 1206 (1946). Most cases in this arena have dealt with the resulting noise disturbance created by overhead flights. *See Branning,* 654 F2d at 99. However, the case law on noise disruptions, whether as a taking, disruption in the reasonable use of the land, or

damage to the value of the land, is analyzed under the same legal rubric as other takings. *Id*. at 98.

[¶28.] Case law on airspace easements created by noise holds that when a further taking occurs after an initial claim of taking has been granted or denied, a claim for an additional easement may prevail. *Id*. at 100 (citing Avery v. United States, 330 F2d 640 (CtCl 1964)). "[T]he introduction of larger, heavier, noisier aircraft can constitute a fifth amendment taking of an additional easement even though the noisier aircraft do not violate the boundaries of an earlier easement." *Id*. (citing *Avery*, 330 F2d 640). While in the context of noise, the principal applies to height restrictions by analogy. If the government institutes restrictions, whether by noise or height limitations, over private property that cause damage or a further taking different from an easement taken earlier in time, an additional taking occurs for which just compensation may be owed. *See id*. at 101.

[¶29.] The County cannot have it both ways and use the first condemnation petition to exact a future taking or damage to the 309 acres not listed in its petition. Permitting County's argument to prevail would result in a future taking without compensation for the Owners. County has filed a petition seeking to acquire title to and pay just compensation for the 206 acres. As a part of this proceeding, it has steadfastly denied it owes any further compensation for severance damages for air easements to the remaining 309 acres. We agree with the trial court's conclusion upholding this argument. The County cannot argue both that the time for claiming severance damages has somehow passed with this litigation and that no future claims are allowed under a doctrine of res judicata should such restrictions be put in

place in the future. To rule otherwise would be a direct violation of Article VI, section 13 and the Owners' private property rights. It would also be in direct violation of SDCL 21-35-2, which has consistently required the explicit description of the property to be condemned. *See* City of Sioux Falls v. Missouri Basin Mun. Power, 2004 SD 14, ¶10, 675 NW2d 739, 742; *see also* Lewis v. St Paul M. & M. Ry. Co., 5 SD 148, 58 NW 580 (1894) (holding, prior to enactment of SDCL 21-35-2, that description must be explicit).

[¶30.]     In *Missouri Basin Mun. Power Agency*, we had the opportunity to address the issue of the adequacy of a legal description in a condemnation petition. *Id*. ¶10, 675 NW2d at 742. Citing SDCL 21-35-2, we held the description is mandatory and construed the statute to require a detail of the description. That

> [d]oes not mean meticulous accuracy, but substantial accuracy—
> that certainty by means of which a reasonably competent person
> could take the instrument and therefrom, aided by such
> inquiries as it suggests, locate the identical property . . . the
> certainty required in the description of the land in a
> condemnation proceeding "is of the same nature as that required
> in conveyances of land, so that a surveyor could go upon the land
> and mark out the land designated."

*Id*. ¶12, 675 NW2d at 742-43 (citations omitted). Failure to comply with this adequacy in the legal description results in a lack of jurisdiction by the trial court to entertain the condemnation action. *Id*., ¶11, 675 NW2d at 742.

[¶31.]     Thus, the trial court had jurisdiction to adjudicate the condemnation action over the 206 acres as it was adequately described in County's petition. However, the trial court did not have jurisdiction to maintain an action over any portion of the 309 acres as that parcel was not described in County's petition and Landowners did not submit sufficient evidence to support a regulatory severance

taking.[4] No res judicata or preclusion claim as to the 309 acres can arise from a proceeding over which there was no jurisdiction from the start.

[¶32.]    In conclusion, Owners have received just compensation for the 206 acres taken by County. All that the trial court's order precludes is a claim by Owners for "*possible future* airspace intrusion" for which no plans, airport authority resolution, or condemnation petition currently exist. (emphasis added.) If and when County actually attempts to impose height restrictions by enacting plans, passing ordinances or resolutions, or filing a new condemnation petition, or the use of Class C and Class D aircraft occurs, Owners are not barred by res judicata from bringing a new takings claim.

[¶33.]    Affirmed as modified.

[¶34.]    KONENKAMP, ZINTER and SEVERSON, Justices, concur.

[¶35.]    MEIERHENRY, Justice, concurs in part and dissents in part.


MEIERHENRY, Justice (dissenting in part and concurring in part).

[¶36.]    I concur with the majority opinion on issue two that res judicata does not bar the Owners from future condemnation proceedings for damages to the 309 acres. I disagree that the summary judgment order should be affirmed. If anything, the County's motion for summary judgment should have been denied

---

4.    This would not preclude jurisdiction over a claim by a landowner for severance damages in a proper case, or for a claim of inverse condemnation because such a claim is initiated by the landowner and not the condemnor and is jurisdictionally self-executing under Article VI, section 13 of the South Dakota Constitution. *See Hurley I*, 82 SD 156, 143 NW2d at 729.

because the issue of damages to the 309 acres was not ripe for determination. The majority opinion concludes that the trial court did not have jurisdiction to adjudicate condemnation over the 309 acres not described in the petition. *Supra* ¶32. I agree. But under this same analysis, the trial court did not have jurisdiction to enter summary judgment on that issue.

[¶37.]     The issue of damages to the 309 acres was not ripe because of the County's handling of the case, not because of some failure by the Owners. The County only defined its taking to include the 206 acres. If the County contemplated aircraft invading the airspace over the remaining property, the County certainly did not include that airspace in the declaration of taking. Likewise, no zoning ordinances or airport approach plans were adopted. Nevertheless, the summary judgment order against the Owners still stands under the majority opinion's holding. Because the trial court lacked jurisdiction and the issue was not ripe, I would reverse and vacate the summary judgment order.